IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | | |
|---|---|---|
| ———————————————— | ) | |
| IN RE REGIONS MORGAN KEEGAN | ) | No. 2:09-md-02009-SHM |
| SECURITIES, DERIVATIVE and ERISA | ) | |
| LITIGATION | ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| *In re Helios Closed-End Fund Derivative* | ) | |
| *Litigation*, No. 2:10-cv-02188-SMH-dvk | ) | |
| ———————————————— | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED DERIVATIVE COMPLAINT BY MORGAN ASSET MANAGEMENT, INC. AND THE INDIVIDUAL DEFENDANTS

Michael L. Dagley
Matthew M. Curley
W. Brantley Phillips, Jr.
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615)742-6200

Shepherd D. Tate
Michael Brady
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, Tennessee  38103-3672
(901) 543-5900

*Attorneys for Defendant Morgan Asset Management, Inc.*

S. Lawrence Polk
SUTHERLAND, ASBILL &
BRENNAN LLP
999 Peachtree Street N.E.
Atlanta, GA 30309-3996
(404) 853-8000

*Attorney for Defendants Allen B. Morgan, Jr., J. Kenneth Alderman, Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, Michele F. Wood, James C. Kelsoe, Jr., Thomas R. Gamble and David H. Tannehill*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

I.     The Parties ................................................................................................................. 3

II.    Factual Background and Plaintiffs' Substantive Allegations .................................... 4

STANDARD OF REVIEW ..................................................................................................... 7

ARGUMENT ......................................................................................................................... 9

I.     Plaintiffs' claims are untimely. ................................................................................. 9

    A.   Plaintiffs may not recover against MAM under § 36(b) of the ICA according to the terms
       of that statute. ..................................................................................................... 9

    B.   Plaintiffs' remaining claims are barred by Maryland's three-year statute of limitations
       applicable to such claims. ................................................................................. 10

II.    Plaintiffs' claims against MAM otherwise fail as a matter of law. ........................ 13

    A.   Plaintiffs' claim under § 36(b) of the ICA fails as a matter of law. ................. 13

    B.   Maryland law does not recognize a cause of action against MAM for breach of fiduciary
       duty or unjust enrichment. ................................................................................ 15

    C.   The Advisory Agreement between each Fund and MAM bars Plaintiffs' claims. ........... 16

III.   Plaintiffs otherwise fail to state a claim for breach of fiduciary duty against the Individual
       Defendants as a matter of law. .......................................................................... 17

    A.   Maryland law concerning alleged breaches of fiduciary duty. ......................... 18

    B.   Plaintiffs' Complaint fails to allege facts sufficient to satisfy Rule 9(b) in order to state a
       claim for breach of fiduciary duty under Maryland law. .................................. 20

        1.   The Funds disclosed their investments in ABS and MBS and other securities and the
            risk associated with investments in such securities. .................................... 21

        2.   Plaintiffs do not plead a breach of fiduciary duty resulting from an alleged violation of
            the Funds' industry concentration restriction. ............................................ 24

3.  Plaintiffs do not plead a breach of fiduciary duty stemming from an alleged manipulation of the Funds' NAV. ............................................................... 26

4.  The balance of Plaintiffs' allegations does not state a claim for breach of fiduciary duty under Maryland law. ...................................................................................... 27

5.  Plaintiffs' may not bring a claim against the Individual Defendants based on MAM's alleged violation of § 36(b) of the ICA. ......................................................... 28

IV.  Plaintiffs' claims must be dismissed with prejudice. ........................................................ 28

CONCLUSION ...................................................................................................................... 29

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ..................................................................................17, 26

*Bank of N.Y. v. Sheff*,
854 A.2d 1269 (Md. 2004) ..................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................7, 17

*Brown v. Neuberger, Quinn, Gielen, Ruben & Gibber, P.A.*,
2010 WL 30600812 (D. Md. Aug. 2, 2010) ........................................................10

*Champion Home Builders Co. v. ADT Sec. Servs., Inc.*,
179 F. Supp. 2d 16 (N.D.N.Y. 2001) ...................................................................17

*Coffey v. Foamex, L.P.*,
2 F.3d 157 (6th Cir. 1993) ....................................................................................8

*CompuSpa, Inc. v. I.B.M. Corp.*,
228 F. Supp. 2d 613 (D. Md. 2002) .....................................................................17

*Faller v. Faller*,
2010 WL 1141202 (D. Md. March 22, 2010) .......................................................15

*FLF, Inc. v. World Publ'ns, Inc.*,
999 F. Supp. 640 (D. Md. 1998) ..........................................................................15

*Freidus v. ING Groep N.V.*,
2010 WL 3554097 (S.D.N.Y. Sept. 14, 2010).....................................................13

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
694 F.2d 923 (2d Cir. 1982)................................................................................14

*Green v. Fund Asset Mgmt., L.P.*,
286 F.3d 682 (3d Cir. 2002)................................................................................10

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
2010 WL 3448194 (Aug. 27, 2010 S.D.N.Y. 2010).......................................18, 19

*In re Barclays Bank PLC Sec. Litig.*,
2011 WL 31548 (S.D.N.Y. Jan. 5, 2011) ...........................................11, 13, 26, 27

*In re Brooks Automation, Inc., Sec. Litig.*,
2007 WL 4754051 (D. Mass. Nov. 6, 2007) .........................................................7

*In re Connetics Corp. Sec. Litig.*,
   542 F. Supp. 2d 996 (N.D. Cal. 2008) ...................................................9

*In re The Goodyear Tire & Rubber Co. Deriv. Litig.*,
   2007 WL 43557 (N.D. Ohio Jan. 5, 2007)...........................................8

*In re Merrill Lynch & Co, Inc. Research Reports Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y. 2003) ...........................................................8

*In re Nuveen Funds Litig.*,
   1996 WL 328006 (N.D. Ill. June 11, 1996) ........................................14

*In re Reciprocal of Am. Sales Practices Litig.*,
   2007 WL 2900282 (W.D. Tenn. Sept. 28, 2007)..................................28

*In re Regions Morgan Keegan Open-End Mutual Fund Litig.*,
   2010 WL 3925265 (W.D. Tenn. Sept. 30, 2010) ..................................8

*In re Sec. Capital Assur., Ltd. Sec. Litig.*,
   2010 WL 1372688 (S.D.N.Y. March 31, 2010) ...................................12

*In re Walt Disney Co. Deriv. Litig.*,
   907 A.2d 693 (Del. Ch. 2005)...............................................................18

*Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v.
   Omnicare, Inc.*, 583 F.3d 935 (6th Cir. 2009) .....................................8

*Int'l B'hood of Teamsters v. Willis Coroon Corp.*,
   802 A.2d 1050 (Md. 2002) ....................................................................15

*Jolly Roger Fund, LP v. Prime Group Realty Trust*,
   2007 Md. Cir. Ct. LEXIS 10 (Md. Cir. Ct. Aug. 16, 2007)................15

*Jones v. Harris Assocs. L.P.*,
   130 S. Ct. 1418 (2010) ..........................................................................14

*Kann v. Kann*,
   322 Md. 689 (Md. 1997).........................................................................15

*Liaros v. Vaillant*,
   1996 WL 88559 (S.D.N.Y. March 1, 1996) ........................................10

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976)...................................................................9

*Melder v. Morris*,
   27 F.3d 1097 (5th Cir. 1994) .................................................................7

*Merck & Co, Inc. v. Reynolds*,
   130 S. Ct. 1784 (2010)...........................................................................11

iv

*Morse v. McWhorter*,
  290 F.3d 795 (6th Cir. 2002) ...................................................................29

*Mulbarger v. Royal Alliance Assocs.*,
  1999 WL 33432317 (S.D. Ohio Dec. 22, 1999),
  *aff'd* 10 Fed. Appx. 333 (6th Cir. 2001) ...............................................8

*Perry v. Am. Tobacco Co., Inc.*,
  324 F.3d 845 (6th Cir. 2003) .....................................................................7

*Risser v. Metro Gov't of Nashville*,
  2009 WL 1974747 (M.D. Tenn. July 7, 2009) ......................................28

*Robotti & Co., LLC v. Liddell*,
  2010 WL 157474 (Del. Ch. Jan. 14, 2010)..............................................18

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004)........................................................................8

*Rubke v. Capital Bancorp Ltd.*,
  460 F. Supp. 2d 1124 (N.D. Cal. 2006),
  *aff'd* 551 F.3d 1156 (9th Cir. 2009)........................................................7

*Ryan v. Gifford*,
  918 A.2d 341 (Del. Ch. 2007).................................................................19

*Ryan v. Morgan Asset Mgmt., Inc.*,
  694 F. Supp. 2d 879 (W.D. Tenn. 2010)................................................10

*Sutherland v. Sutherland*,
  2010 WL 1838968 (Del. Ch. May 3, 2010) ...........................................19

*Trumball Inv., Ltd. v. Wachovia Bank, N.A.*,
  2005 WL 6148880 (E.D. Va. Apr. 15, 2005) .........................................17

*Wolf v. Ford*,
  644 A.2d 522 (Md. 1994) ........................................................................16

*Yampolsky v. Morgan Stanley Inv. Adv., Inc.*,
  2004 WL 1065533 (S.D.N.Y. May 12, 2004) .......................................14

## STATUTES

15 U.S.C. § 80a-5.....................................................................................4

15 U.S.C. § 80(a)-35(b) .......................................................................9, 14

15 U.S.C. § 80(a)-17(h) ..........................................................................20

15 U.S.C. § 80a-17(i) .................................................................................16

Md. Code Ann. 2-405.1 ...............................................................................18

Md. Code. Ann. Corps. & Ass'ns § 2-405.2 ...............................................20

Md. Code Ann., Cts. & Jud. Proc. § 5-101 .................................................10

Md. Code Ann., Cts. & Jud. Proc. § 5-418 .................................................20

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ............................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)............................................................................7, 17

Fed. R. Civ. P. 12(c) ...................................................................................7

Fed. R. Civ. P. 12(f) ...................................................................................9

## INDEX OF EXHIBITS AND ABBREVIATIONS

| Exhibit Letter | Exhibit Title | Abbreviation |
|---|---|---|
| A | RMK High Income Fund, Inc. Prospectus, dated June 24, 2003 | RMH Prosp. |
| B | RMK High Income Fund, Inc Statement of Additional Information, dated June 24, 2003 | RMH SAI |
| C | RMK Strategic Income Fund, Inc. Prospectus, dated March 18, 2004 | RSF Prosp. |
| D | RMK Strategic Income Fund, Inc. Statement of Additional Information, dated March 18, 2004 | RSF SAI |
| E | RMK Advantage Income Fund, Inc. Prospectus, dated November 8, 2004 | RMA Prosp. |
| F | RMK Advantage Income Fund, Inc. Statement of Additional Information, dated November 8, 2004 | RMA SAI |
| G | RMK Multi-Sector High Income Fund, Inc. Prospectus, dated January 19, 2006 | RHY Prosp. |
| H | RMK Multi-Sector High Income Fund, Inc. Statement of Additional Information, dated January 19, 2006 | RHY SAI |
| I | Consolidated Annual Report for RMA, RMH, RHY, and RSF Funds, for the period ended March 31, 2006 | 2006 Consol. Ann. Rpt. |
| J | Consolidated Semi-Annual Report for RMA, RMH, RHY, and RSF Funds, for the period ended September 30, 2006 | Sept. 2006 Consol. Semi-Ann. Rpt. |
| K | Consolidated Annual Report for RMA, RMH, RHY, and RSF Funds, for the period ended March 31, 2007 | 2007 Consol. Ann. Rpt. |
| L | Consolidated Semi-Annual report for RMA, RMH, RHY, and RSF Funds, for the period ended September 30, 2008 | Sept. 2008 Consol. Semi-Ann. Rpt. |
| M | Investment Advisory Agreement between RMK High Income Fund, Inc. and Morgan Asset Management, Inc., dated June 24, 2003 | RMH Adv. Agmt. |
| N | Investment Advisory Agreement between RMK Strategic Income Fund, Inc. and Morgan Asset Management, Inc., dated March 18, 2004 | RSF Adv. Agmt. |
| O | Investment Advisory Agreement between RMK Advantage Income Fund, Inc. and Morgan Asset Management, Inc. dated November 8, 2004 | RMA Adv. Agmt. |
| P | Investment Advisory Agreement between RMK Multi-Sector High Income Fund, Inc. and Morgan Asset Management, Inc. dated January 19, 2006 | RHY Adv. Agmt. |

| Q | RMK High Income Fund, Inc. Articles of Incorporation | RMH Art. of Incorp. |
|---|---|---|
| R | RMK Strategic Income Fund, Inc. Articles of Incorporation | RSF Art. of Incorp. |
| S | RMK Advantage Income Fund, Inc. Articles of Incorporation | RMA Art. of Incorp. |
| T | RMK Multi-Sector High Income Fund, Inc. Articles of Incorporation | RHY Art. of Incorp. |
| U | Alan Greenspan, "The Roots of the Mortgage Crisis," *Wall Street Journal*, December 12, 2007 | Greenspan, "The Roots of the Mortgage Crisis" |

Morgan Asset Management, Inc. ("MAM"), Allen B. Morgan, Jr., J. Kenneth Alderman, Thomas R. Gamble, Charles D. Maxwell, Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, Michele F. Wood, James C. Kelsoe, Jr., and David H. Tannehill (collectively, the "Individual Defendants") respectfully submit this memorandum of law in support of their motion to dismiss this derivative action.[1]

## PRELIMINARY STATEMENT

Plaintiffs Cecil Cannaday and Ronald Godfrey (collectively, "Plaintiffs") are shareholders of the Helios Advantage Income Fund, Inc. (f/k/a RMK Advantage Income Fund, Inc.) ("RMA Fund"), Helios High Income Fund, Inc. (f/k/a RMK High Income Fund, Inc.) ("RMH Fund"), Helios Strategic Income Fund, Inc. (f/k/a RMK Strategic Income Fund, Inc.) ("RSF Fund"), and/or Helios Multi-Sector High Income Fund (f/k/a RMK Multi-Sector High Income Fund, Inc.) ("RHY Fund") (collectively, the "Funds").[2]   The Funds are closed-end investment companies organized under the laws of Maryland.  Plaintiffs purport to bring this lawsuit derivatively on the Funds' behalf, seeking to recover damages allegedly sustained by the Funds, as a result of Defendants' alleged knowing and intentional mismanagement of the Funds. Plaintiffs assert claims under § 36(b) of the Investment Company Act of 1940 (the "ICA") and for unjust enrichment to recover advisory fees paid to MAM, the Funds' investment advisor, and for breach of fiduciary duty against MAM and the Individual Defendants, who served as officers and directors of the Funds and/or MAM.

Plaintiffs' claims fail as a matter of law and must be dismissed.  Plaintiffs' claim under § 36(b) of the ICA, which seeks recovery of advisory fees from MAM, is untimely.  Under that

---

[1]     MAM and the Individual Defendants incorporate the arguments in the motions to dismiss filed by the Funds' Independent Directors to the extent those arguments are applicable to MAM and the Individual Defendants with respect to the issues discussed herein.

[2]     For purposes of this motion, Defendants will refer to the Funds by their former names.

provision of the ICA, Plaintiffs may only recover damages that accrued during the year prior to filing suit.  MAM, however, did not serve as the Funds' investment advisor during that period and consequently, no advisory fees were paid to MAM.  The balance of Plaintiffs' claims against MAM and the officers and directors of the RMH, RMA, and RSF Funds and certain of the officers and directors concerning the RHY Fund are untimely by virtue of Maryland's three-year statute of limitations applicable to civil actions.  Plaintiffs' own allegations, particularly when considered in connection with the Funds' offering documents and other public filings, demonstrate that Plaintiffs were on notice of their claims by January 2007 at the latest, more than three years prior to the filing of this lawsuit.

Furthermore, under the allegations as pleaded, Maryland law does not recognize a stand-alone claim for breach of fiduciary duty or for unjust enrichment against MAM.  Even assuming such claims could be asserted under Maryland law, Plaintiffs' claims would fail because MAM advised the Funds pursuant to Investment Advisory Agreements ("Advisory Agreements") with each Fund, which contained broad limitations on liability.  The Funds' respective Articles of Incorporation contained similar provisions limiting the liability of the Individual Defendants. Plaintiffs have failed to plead claims that fall outside of the exculpatory provisions of either the Advisory Agreements or the Funds' Articles of Incorporation.

Finally, because Plaintiffs allege that Defendants breached their fiduciary duties by engaging in fraudulent misconduct, their claims are subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  Plaintiffs, however, have failed to meet this heightened pleading requirement.  It is evident that Plaintiffs hope to substitute the Funds' poor performance in the wake of the global credit crisis for factual allegations sufficient to show a breach of fiduciary duty as a matter of law.  When the allegations in the Complaint are considered, Plaintiffs have failed to plead any facts demonstrating that Defendants knowingly

and intentionally breached fiduciary duties owed to the Funds.   Plaintiffs rely virtually exclusively on conclusory assertions of fraud, and allegations copied from pleadings in regulatory proceedings.   Such allegations are insufficient to state a claim as a matter of law.

## STATEMENT OF FACTS

### I.     The Parties

Plaintiffs are shareholders of the Funds.   (Compl. ¶¶ 14, 15.)   Plaintiffs filed their Verified Consolidated Shareholder Derivative Complaint ("Complaint") on December 6, 2010. (Docket No. 33.)[3]

The Funds at issue are closed-end investment companies organized under the laws of the state of Maryland and pursuant to the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-1 *et seq.*  MAM is a registered investment adviser that managed and advised the Funds until July 29, 2008.   On that date, Hyperion Brookfield Asset Management, Inc. ("Hyperion") assumed the role of investment advisor to the Funds.   *See* Declaration of Matthew M. Curley ("Curley Dec."), Ex. L (Sept. 2008 Consol. Semi-Ann. Rpt.).

In addition to MAM, Plaintiffs have sued various individuals in this action, including the Funds' former independent directors,[4] those who served as directors and officers of the Funds and/or MAM, and the Funds Senior and Assistant Portfolio Managers.[5]   For purposes of this

---

[3]     Plaintiffs originally filed separate lawsuits in this Court captioned *Cannaday v. Sullivan, et. al.*, Case Nos. 2:10-cv-02188-SHM-tmp (W.D. Tenn. March 18, 2010); 2:10-cv-02190-SHM-dkv (W.D. Tenn. March 18, 2010); 2:10-cv-02191-SHM-cgc (W.D.Tenn. March 18, 2010), and *Godfrey v. Sullivan, et. al.*, Case No. 2:10-cv-02192-SHM-dkv (W.D. Tenn. March 18, 2010).   On November 5, 2010, the Court consolidated these actions under Case No. 2:10-cv-02188-SHM-dkv. (Docket Entry No. 32.)

[4]     The "Independent Directors" include Jack R. Blair, Albert C. Johnson, James S. R. McFadden, W. Randall Pittman, Mary S. Stone, and Archie W. Willis, III.

[5]     Officers and directors of MAM and/or the Funds include Allen B. Morgan, Jr., J. Kenneth Alderman, Carter E. Anthony, Thomas R. Gamble, Charles D. Maxwell, Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, and Michele F. Wood.   Defendants James C. Kelsoe, Jr. and David H. Tannehill were MAM employees who served as the Funds' Senior and Assistant Portfolio Managers, respectively.   (*See* Compl. ¶¶ 17-33.)

motion to dismiss, all of the individual defendants other than the Independent Directors are collectively referred to as the "Individual Defendants."

## II.    Factual Background and Plaintiffs' Substantive Allegations

Closed-end investment companies, such as the Funds at issue in this action, do not continuously offer and redeem new securities like open-end investment companies (*i.e.*, mutual funds).  Rather, the Funds' shares are traded on the secondary market after an initial public offering and share prices are dictated by market forces.  Unlike shareholders of mutual funds, shareholders of closed-end investment companies do not have redemptive rights once shares have been purchased.  *See* 15 U.S.C. § 80a-5.

The Funds at issue in this action had their initial public offerings on June 24, 2003 (RMH Fund), March 18, 2004 (RSF Fund), November 8, 2004 (RMA Fund), and January 19, 2006 (RHY Fund), respectively.  As required by law, the Funds' offering documents disclosed the Funds' investment strategy, which was to invest "a majority of [their] total assets in below investment grade debt securities," commonly referred to as "junk bonds."  *See* Curley Dec. Exs. E (RMA Prosp. at Cover Page), A (RMH Prosp. at Cover Page), D (RSF Prosp. at Cover Page), G (RHY Prosp. at Cover Page).

The Funds also disclosed the percentage of investments the Funds could make in below investment grade securities and distressed securities.  *Id.*, Exs. A (RMH Prosp. at 14 (100% in below investment grade debt and 10% in distressed securities)), E (RMA Prosp. at 15 (same); *see also id.*, Exs. G (RHY Prosp. at 16 (stating that the RHY Fund anticipated investing at least 50% of its assets in below investment grade debt and could invest up to 20% in distressed securities)), D (RSF Prosp. at 15 (stating that the RSF Fund could invest up to 65% of its assets in below investment grade debt)).  Specific types of debt securities in which the Funds could invest included, among others, Asset-Backed Securities ("ABSs") and Mortgage-Backed Securities

("MBSs").  *See, e.g.,* Curley Dec. Ex. A (RMH Prosp. at 15-20); *see also id.* Ex. B (RMH SAI at 2-26); Ex. D (RSF SAI at 2-27); Ex. F (RMA SAI at 3-28); Ex. H (RHY SAI at 2-37).

The Funds also disclosed to investors the risks associated with an investment in the Funds, including the risks associated with the types of securities in which the Funds would invest.  To this end, the Funds disclosed, *on the cover page* of each Fund's prospectus, that "[t]he Fund[s'] strategy of investing the majority of its total assets in below investment grade debt securities and its expected use of leverage *involve a high degree of risk*."  Curley Dec. Exs. A, E, G, D (RMH, RSF, RMA, & RHY Prosp. at cover pages) (emphasis supplied).   Moreover, the Funds disclosed that "[u]nder adverse market or economic conditions, the secondary market for below investment grade securities could contract . . . and these instruments may become illiquid. . . . Factors having an adverse impact on the market value of below investment grade securities may have an adverse effect on the Fund's net asset value and the market value of its common shares."  *See, e.g., id.* Ex. A (RMH Prosp. at 25); *see also id.,* Ex. A (RMH Prosp. at 26 ("[M]ortgage-backed securities are subject to the credit risk associated with the performance of the underlying mortgage properties.")).

For approximately four years, the Funds provided investors with returns generally superior to funds with other similar objectives.  (*See, e.g.,* Compl. ¶ 65 (discussing the Funds' respective returns).)  In mid-to-late 2007, however, an emerging global credit and financial crisis caused the market for fixed-income debt securities such as the ABSs and MBSs in which the Funds invested to evaporate.  As former Federal Reserve Chairman Alan Greenspan explained, "[o]n August 9, 2007, and the days immediately following, financial markets in much of the world seized up.  *Virtually overnight*, the seemingly insatiable desire for financial risk came to an abrupt halt as the price of risk unexpectedly surged."  Curley Dec. Ex. U (Greenspan, "The Roots of the Mortgage Crisis")(emphasis supplied).  As a result, certain investment-grade

securities and the below-investment grade debt securities in which the Funds invested essentially became illiquid overnight.  The downturn caused sharp and immediate reductions in the prices at which such securities could be sold, resulting in a drop in the Funds' net asset values ("NAVs"), which must be calculated daily using the current values of the Funds' assets.

Plaintiffs largely disregard the pervasive and unprecedented nature of the collapse of the credit markets.  They baldly allege that Defendants predicted the severity of the downturn and the impact it would have on the Funds, and knowingly withheld this information from investors. (Compl. ¶¶ 91, 93.)  Indeed, Plaintiffs do not discuss the overall economic context of the Funds' losses at all.  Rather, they refer to two August 2007 communications to the Funds' investors discussing the Funds' decrease in value at the onset of the financial crisis as a "Revelation of Defendants' Misconduct," (*see, e.g., id.* ¶¶ 95-96), and neglect to mention that these two "revelations" were contemporaneous with the overnight failure of the global credit markets beginning on August 9, 2007, *see* Curley Dec. Ex. U (Greenspan, "The Roots of the Mortgage Crisis").  Far from revealing "misconduct," these communications were prompt disclosures of the "unprecedented liquidity issue [that affected] the broader financial markets," in late 2007.

Notwithstanding the realities of the marketplace and the Funds' disclosures, Plaintiffs bring this action derivatively on behalf of the Funds, alleging that Defendants knowingly and intentionally mismanaged the Funds by: (1) causing them to invest heavily in asset-backed securities ("ABSs"), mortgage-backed securities ("MBSs"), collateralized debt obligations ("CDOs"), and other supposedly illiquid securities; (2) concentrating more than 25% of the Funds' assets in one industry; (3) failing to disclose to investors the extent of the Funds' investments in these securities and the resulting risk; and (4) overstating the value of the securities in the Funds' portfolios, thereby overstating the Funds' net asset values ("NAV") and concealing losses from investors.  (Compl. ¶ 8.)  As a result, Plaintiffs allege that Defendants

breached fiduciary duties owed to the Funds.  (*Id.* ¶¶ 118-121).  Plaintiffs also seek to recover "excessive fees" allegedly paid to MAM for services rendered as the Funds' investment adviser. (*Id.* ¶¶ 122-129.)

## **STANDARD OF REVIEW**

Under Rule 12 of the Federal Rules of Civil Procedure, a court may dismiss a Complaint where the plaintiff can prove no set of facts in support of a claim that would entitle plaintiff to relief.  *See* Fed. R. Civ. P. 12(b)(6) & 12(c).  While the court must construe the complaint in favor of the plaintiff, the court "need not accept as true 'legal conclusions or unwarranted factual inferences.'"  *See Perry v. Am. Tobacco Co., Inc.*, 324 F.3d 845, 848 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).  A plaintiff must provide more than "labels and conclusions," and must plead facts sufficient "to raise a right to relief above a speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs' claims are premised on allegations of fraud.[6]  Accordingly, to survive a motion to dismiss Plaintiffs' allegations likewise must satisfy Rule 9(b) of the Federal Rules of Civil

---

[6]     Plaintiffs contend that Defendants "knowingly" caused the Funds to breach their investment guidelines and restrictions, misrepresented the nature of the Funds' investments and the risks inherent therein, and knowingly and intentionally overstated the value of securities held by the Funds.  (*See, e.g.*, Compl. ¶ 8; *id.* ¶ 54 (Defendants "knowingly caused or allowed" all of the Funds to overconcentrate in "risky illiquid securities," violate their investment restrictions regarding industry concentration, and misrepresent their financial performance); ¶ 60 ("Defendants knowingly caused or allowed the Funds to issue false and misleading financial reports on Forms N-CSR and N-Q in order to conceal their illicit practices."); ¶ 61 ("Kelsoe and MAM made *fraudulent* misrepresentations and omissions of material facts directly to the Funds' investors concerning the Funds' performance." (emphasis supplied)); ¶ 72 ("Defendants knowingly failed to price the Funds' illiquid investments . . . at 'fair value.'").  Such allegations invoke classic "fraud language."  *See In re Brooks Automation, Inc., Sec. Litig.*, 2007 WL 4754051, *14 (D. Mass. Nov. 6, 2007).

Plaintiffs incorporate allegations such as these into each of their claims, demonstrating that all claims sound in fraud.  (*See* Compl. ¶¶ 118, 122, 127.)  *See, e.g., Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994) (holding that a "complaint's wholesale adoption of [fraud] allegations" under non-fraud claims for relief subjects a complaint to the requirements of Rule 9(b)); *Rubke v. Capital Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1135 (N.D. Cal. 2006) (same, where complaint "fully incorporates all allegations previously averred in the complaint for purposes of all [plaintiff's] claims") (quotation omitted), *aff'd* 551 F.3d 1156 (9th Cir. 2009).   For this reason, Plaintiffs must satisfy Rule 9(b)'s requirement with respect to each of the claims.

Procedure by "alleg[ing] the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme, the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993); *see also In re Regions Morgan Keegan Open-End Mutual Fund Litig.*, 2010 WL 3925265, *6 (W.D. Tenn. Sept. 30, 2010) ("This heightened pleading standard mandates that plaintiffs alleging fraud 1) specify which statements were fraudulent, 2) identify the defendant(s) who spoke the fraudulent statements, 3) describe when and where the statements were made and 4) explain why the statements were fraudulent.") (quotation marks and citation omitted).[7]

Finally, Plaintiffs may not satisfy their pleading burden through incorporation of allegations made in other proceedings.  (*See, e.g.,* Compl. ¶¶ 9-10; ¶ 57 (premising Plaintiffs' allegations "as stated in the FINRA Complaint"); ¶ 58 ("[p]ursuant to the FINRA Complaint"); ¶ 61 ("according to the SEC Order, Kelsoe and MAM made fraudulent misrepresentations and omissions of material facts directly to the Funds' investors"); ¶ 62 ("according to the FINRA Complaint, MAM and Morgan Keegan issued false and misleading sales materials"); ¶¶ 103-104 (quoting blocks of text from press releases issued by the SEC and FINRA).)

Allegations made in regulatory proceedings are nothing more than allegations;  they do not constitute facts, have not been tested by any court, are immaterial and cannot salvage a Complaint that is otherwise deficient as a matter of law.  *See In re Merrill Lynch & Co, Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (striking references to a

---

[7]     Rule 9(b) applies where the complaint sounds in fraud even where no claim of fraud is made.  *See Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 948 (6th Cir. 2009) ("[S]ince the [allegations] sound in fraud, Rule 9(b) must apply."); *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (applying Rule 9(b) to claims under §§ 11 and 12(a)(2) of the 1933 Act "insofar as the claims are premised on allegations of fraud"); *In re The Goodyear Tire & Rubber Co. Deriv. Litig.*, 2007 WL 43557, *10 (N.D. Ohio Jan. 5, 2007) (dismissing derivative action where the "allegations sound in securities fraud and are not pleaded with the particularity required by Fed. R. Civ. P. 9(b), let alone the heightened standard of the PSLRA"); *Mulbarger v. Royal Alliance Assocs.*, 1999 WL 33432317, *2 (S.D. Ohio Dec. 22, 1999) (applying Rule 9(b) to claims for negligent misrepresentation and breach of fiduciary duty predicated upon fraud), *aff'd* 10 Fed. Appx. 333 (6th Cir. 2001).

complaint filed by the SEC against Defendants in federal court, holding that "references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) of the Federal Rules of Civil Procedure").[8]

This Court already has rejected efforts by plaintiffs in a related action pending before this Court to employ such practices.  *See* Order Granting in Part Plaintiff's Motion for Leave to File a Sur-Reply, *Ryan v. Morgan Asset Mgmt, Inc., et al.*, Case No. 2:08-cv-02162-SHM-dkv (W.D. Tenn. Dec. 15, 2009) (Docket Entry No. 58) ("This Court has no duty to examine a separate complaint filed [in another case] and determine exactly what additional claims for relief Plaintiff intents to plead in this case.'" (quoting *Davis v. Bifani*, 2007 U.S. Dist. LEXIS 30080, *3 (D. Colo. Apr. 24, 2007) (alterations in original)).  Plaintiffs' Complaint must rise and fall on its own merit, not the merits of a myriad of allegations drawn from other proceedings.[9]

## ARGUMENT

I.   **Plaintiffs' claims are untimely.**

A.   **Plaintiffs may not recover against MAM under § 36(b) of the ICA according to the terms of that statute.**

Section 36(b)(3) of the ICA provides that "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted."  15 U.S.C. § 80(a)-35(b)(3). Plaintiffs did not file this action until March 18, 2010.  Under the provision of the ICA at issue, potential claims under § 36(b) are limited to claims for recovery of fees paid between March 18,

---

[8]   *See also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (holding that references to a complaint filed by the SEC was improper, and that "neither a complaint nor references to a complaint which results in a consent judgment may properly be cited in the pleadings under the facts of this case"); *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (evaluating a plaintiff's effort to incorporate allegations from a complaint filed by the SEC under attorney's obligation under Rule 11(b) and striking portions of plaintiff's paragraph relying on SEC complaint as factual support for plaintiff's allegations).

[9]   This is particularly true given the fact that the regulatory proceedings cited by Plaintiffs involve Funds beyond those at issue in this action.  None of the allegations cited by Plaintiffs is specific to any of the Funds at issue here.

2009, and March 18, 2010.  *See Liaros v. Vaillant*, 1996 WL 88559, *14 (March 1, S.D.N.Y. 1996) (holding that claims under § 36(b) are barred where the damages in question accrued prior to one year before the action was instituted); *see also Green v. Fund Asset Mgmt., L.P.*, 286 F.3d 682, 686 n.4 (3d Cir. 2002) (recognizing the limitation on recovery under § 36(b)).

MAM was replaced as investment adviser to the Funds on July 29, 2008, by Hyperion Brookfield Asset Management, Inc.  *See* Curley Dec. Ex. L (Sept. 2008 Consol. Semi-Ann. Rpt. at 1).  Accordingly, as MAM had no involvement with the Funds concerning the only time period during which Plaintiffs could recover fees paid to MAM on behalf of the Funds, Plaintiffs' claim under § 36(b) fails as a matter of law.

### B. Plaintiffs' remaining claims are barred by Maryland's three-year statute of limitations applicable to such claims.

Plaintiffs' claims for breach of fiduciary duty and unjust enrichment are barred by Maryland's three-year statute of limitations applicable to civil actions.[10]  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.  Under Maryland law, "[l]itigants have three years from the date their action accrues to file a civil action."  *Bank of N.Y. v. Sheff*, 854 A.2d 1269, 1275 (Md. 2004).  A plaintiff's cause of action accrues when "the plaintiff knows or reasonably should have known of the wrong."  *Brown v. Neuberger, Quinn, Gielen, Ruben & Gibber, P.A.*, 2010 WL 30600812, *4 (D. Md. Aug. 2, 2010).  Plaintiffs are on notice of their claims "when uncontroverted evidence clearly demonstrates when the plaintiff should have discovered the fraudulent conduct.  The duty

---

[10]    Defendants acknowledge that Plaintiffs' claims for breach of fiduciary duty against Defendants MAM, Morgan, and Alderman are not time-barred as they relate to the RHY Fund (to the extent such claims exist as a matter of law).  Those Defendants executed a tolling agreement in connection with the board's investigation of claims asserted on behalf of the RHY Fund in *Ryan v. Morgan Asset Management, Inc.*, a putative derivative action that has since been dismissed by the Court.  *See Ryan v. Morgan Asset Mgmt., Inc.*, 694 F. Supp. 2d 879 (W.D. Tenn. 2010).

Defendants likewise executed a tolling agreement with respect to the RMH, RMA, and RSF Funds with an effective date as of the filing of this action.  Because Plaintiffs' claims were untimely as of the date of the filing of this action, the tolling agreement with respect to the RMH, RMA, and RSF Funds has no bearing on the timeliness of the claims asserted in this action.

to inquire can be triggered by information contained in the financial press, mainstream media, and publicly filed documents." *In re Barclays Bank PLC Sec. Litig.*, 2011 WL 31548, *6 (S.D.N.Y. Jan. 5, 2011) (quotation marks and citations omitted).[11]

In an effort to show that Defendants allegedly knowingly breached fiduciary duties owed to the Funds, Plaintiffs' Complaint relies on information available to the public as of January 2007.  (*See* Compl. ¶ 91.)  Plaintiffs also cite to publicly available information in an effort to show that Defendants were on notice of changes in the markets that led to the Funds' losses.  The Complaint itself quotes extensively from articles published in the mainstream and financial press in late 2006 and January 2007, which, according to Plaintiffs, contain "relevant and available information that clearly indicated that the stated values of the Funds' [MBSs, ABSs, and CDOs] were too high," (Compl. ¶ 84), and "had declined dramatically" due to adverse economic conditions (*id.* ¶ 91; *see also id.* ¶ 86 (quoting October 10, 2006 *Investor's Business Daily* article discussing that "the number of mortgage foreclosures had increased dramatically," and that the Mortgage Bankers Ass'n delinquency data cited a "notable uptick in default among subprime loans"); ¶ 88 (quoting December 19, 2006 *PR Newswire* article stating that "CRL's research suggests that risky lending practices have triggered the worst foreclosure crisis in the modern mortgage market"); ¶ 89 (quoting January 26, 2007 *New York Times* article stating that "*[a] sharp contraction in subprime mortgages would have ripple effects, reducing consumers' access*

---

[11]     That the court in *In re Barclays* applied the standard for "inquiry notice" to determine when the limitations period began to run is immaterial for purposes of the current motion.  Although the Supreme Court has noted a distinction between the "discovery rule" and the "inquiry notice" standard in relation to triggering limitations periods, *see Merck & Co, Inc. v. Reynolds*, 130 S. Ct. 1784, 1788-89 (2010), that distinction is irrelevant to the current analysis.  First, the Court in *Merck* applied the discovery rule to allegations of securities fraud under section 10(b) of the Securities and Exchange Act of 1934, allegations not presented by Plaintiffs here.  Moreover, application of either the "discovery rule" or the "inquiry notice" standard in this case demonstrates that Plaintiffs possessed information sufficient to trigger the limitations period by January 2007, at the latest, under either standard.  Thus, even if the distinction addressed in *Merck* were applicable here, it does not alter the outcome of this analysis.

*to credit and affecting investors like foreign central banks, pensions and mutual funds that have been big buyers of mortgage-backed securities"*).)

Plaintiffs' own allegations concede that this information put reasonable persons on notice of their claims. *See In re Sec. Capital Assur., Ltd. Sec. Litig.*, 2010 WL 1372688, *26 (S.D.N.Y. March 31, 2010) ("Plaintiffs were just as aware of the housing market crisis as they allege Defendants were, but they did not act on that information to sell their stock as the price declined. As Plaintiffs themselves have alleged, the housing crisis was popular news by the end of 2006 and early 2007."). Indeed, it would be patently unfair for Plaintiffs to cite to such publicly available information as supposed evidence of Defendants' alleged breach of fiduciary duty and not consider Plaintiffs to have been on notice of the very same public information for purposes of determining whether their claims were timely.

This conclusion is bolstered by a review of the Funds' public disclosures. These disclosures further support the fact that Plaintiffs "knew or reasonably should have known" of information revealing Defendants' purported breaches of fiduciary duties more than three years prior to filing suit. Plaintiffs allege that Defendants concealed the extent of the Funds' investments in ABSs and MBSs, and the extent to which the values were impacted by the unfolding credit and financial crisis. As discussed below, however, the Funds have disclosed their compositions of their portfolios in publicly filed annual, semi-annual, and quarterly reports. These reports list each type of security held by the Funds by name, identifying each as "mortgage-backed" or "asset-backed," and providing the percentage of the Funds' portfolio comprised by each type of asset. Moreover, as Plaintiffs expressly allege, the Funds' Semi-Annual Report for the period ended September 30, 2006 disclosed that "[i]n the asset-backed sector . . . concerns over the slow down in housing and real estate in general caused credit

spreads to expand and acted to depress overall performance from our portfolio of mortgage related securities." (Compl. ¶ 66.)

Plaintiffs are charged with notice of this information as a matter of law. When faced with allegations such as those made by Plaintiffs in this action, courts have imputed notice to plaintiffs where a complaint concedes that "by early 2006, investors were increasingly concerned about financial institutions' exposure to mortgage-backed securities." *Freidus v. ING Groep N.V.*, 2010 WL 3554097 (S.D.N.Y. Sept. 14, 2010). In *Freidus*, the district court found plaintiffs to be on notice of their claims where available public "disclosures specifically related to . . . the specific [risky] assets [defendants] allegedly did not disclose . . . and the fact that they were losing value." *Id.* at *7. The same conclusion is warranted here.

By January 2007, *at the latest*, Plaintiffs were in possession of the very same information they claim was improperly withheld from investors and which they claim amounted to a breach of fiduciary duty. As a matter of law, Plaintiffs were on notice of their claims more than three years before filing suit on March 18, 2010. *See In re Barclays*, 2011 WL 31548, at *7 ("[T]he information that triggered Lead Plaintiffs' notice was the very information that Lead Plaintiffs claim was not disclosed at the proper time."). Plaintiffs' claims, therefore, are time-barred.

## II.   Plaintiffs' claims against MAM otherwise fail as a matter of law.

### A.   Plaintiffs' claim under § 36(b) of the ICA fails as a matter of law.

Plaintiffs allege that MAM's "advisory fees were based on the assets held by the Funds, and therefore, MAM was overcompensated based on the Funds' improperly inflated asset values." (Compl. ¶ 92.) An investment adviser's compensation is governed by Section 36(b) of the ICA, which provides that "[a]n action may be brought under this subsection . . . by a security holder of such registered investment company on behalf of such company, against [an] investment adviser . . . for breach of fiduciary duty in respect of such compensation or payments

13

paid by such registered investment company . . . to such investment adviser or person."  15 U.S.C. § 80a-35(b).  Courts have recognized that "[t]his language indicates a standard of care that only runs to the terms and receipt of compensation and not one that broadly governs an investment adviser's performance."  *In re Nuveen Funds Litig.*, 1996 WL 328006, *12 (N.D. Ill. June 11, 1996).

The proper analysis focuses "on the terms of the fee arrangement."  *Nuveen Funds*, 1996 WL 328006, at *14.  "[T]o face liability under § 36(b), an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."  *Jones v. Harris Assocs. L.P.*, 130 S. Ct. 1418, 1426 (2010); *see also Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928  (2d Cir. 1982) ("[T]he advisor-manager must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arms-length bargaining."); *Yampolsky v. Morgan Stanley Inv. Adv., Inc.*, 2004 WL 1065533, *2 (S.D.N.Y. May 12, 2004) (noting that allegations that a fund underperformed its peers, among other things, does not state a claim under § 36(b)).  Importantly, "[t]he Investment Company Act . . . shifts the burden of proof from the fiduciary to the party claiming breach, 15 U.S.C. § 80a-35(b)(1), to show that the fee is outside the range that arm's length bargaining would produce."  *Jones*, 130 S. Ct. at 1427.  *See also id.* at 1430 ("It is also important to note that the standard for fiduciary breach under § 36(b) does not call for judicial second-guessing of informed board decisions.").

Plaintiffs plead no facts that would show the terms of MAM's compensation to be improper, much less to show that such compensation was "so disproportionately large that it bears no reasonable relationship to the services rendered," or that it "was not the product of arms-length bargaining."  Plaintiffs' allegations incorrectly focus on the Funds' *performance* and

MAM's alleged failure to write down the value of the Funds' portfolios in a timely manner. Caselaw makes clear that allegations of poor performance or mismanagement does not state a claim for relief under § 36(b).  Regardless, Plaintiffs have failed to plead any facts demonstrating that the value of any specific asset held by any of the Funds was incorrect at any point in time, much less improperly inflated by MAM's misconduct.  Plaintiffs' claim must be dismissed as a matter of law.

### B. Maryland law does not recognize a cause of action against MAM for breach of fiduciary duty or unjust enrichment.

Plaintiffs' claims against MAM for breach of fiduciary duty and unjust enrichment fail as a matter of law.  With respect to Plaintiffs' claim for breach of fiduciary duty against MAM, Maryland law does not recognize "breach of fiduciary duty" as an independent tort or stand-alone claim.  While Maryland law recognizes the existence of fiduciary duties, a claim that a fiduciary duty has been breached must be asserted in the context of some other claim, such as the violation of Maryland statutory law concerning fiduciary duties owed by officers and directors of a corporation, or negligence.  *See, e.g., Int'l B'hood of Teamsters v. Willis Coroon Corp.*, 802 A.2d 1050, 1051 n.1 (Md. 2002) ("Maryland does not recognize a separate tort action for breach of fiduciary duty."); *Kann v. Kann*, 322 Md. 689, 693 (Md. 1997) ("[A]llegations of breach of fiduciary duty, in and of themselves, do not give rise to an omnibus or generic cause of action at law that is assertable against all fiduciaries."); *Faller v. Faller*, 2010 WL 1141202, *5 (D. Md. March 22, 2010) ("Maryland state and federal courts have clarified . . . that a breach of fiduciary duty can give rise to a cause of action, but it cannot be an independent cause of action.").

Similarly, Maryland law does not recognize a cause of action for unjust enrichment when an express contract governs the subject matter between the parties.  *See FLF, Inc. v. World Publ'ns, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998); *Jolly Roger Fund, LP v. Prime Group Realty Trust*, 2007 Md. Cir. Ct. LEXIS 10, at *27-28 (Md. Cir. Ct. Aug. 16, 2007).  Plaintiffs'

unjust enrichment claim is premised entirely on MAM's alleged "receipt of excessive fees based on improperly inflated asset values . . . ."  (Compl. ¶ 128.)  MAM's receipt of fees from the Funds was exclusively pursuant to the Investment Advisory Agreements between MAM and each of the Funds.  *See* Curley Dec. Exs. M-P (RMH, RSF, RMA, & RHY Adv. Agmts.).  Accordingly, Plaintiffs' unjust enrichment claim against MAM fails as a matter of law.

   C.    **The Advisory Agreement between each Fund and MAM bars Plaintiffs' claims.**

   MAM and its officers, directors and/or employees, performed the actions at issue pursuant to the Advisory Agreements between MAM and each the Funds.   These Agreements contain identical provisions that exculpate MAM and its officers, directors and employees from liability "for any error of judgment or mistake of law or for any loss suffered by the Fund," in the absence of "misfeasance, bad faith, or gross negligence in the performance of the Adviser's duties, or by reason of the Adviser's reckless disregard of its obligations and duties under this Agreement."  *See* Curley Dec. Exs. M-P (RMH, RSF, RMA, & RHY Adv. Agmts., § 12.1).

   Such provisions are well-accepted and enforceable under Maryland law and the ICA.  *See Wolf v. Ford*, 644 A.2d 522, 528, 537 (Md. 1994) (upholding exculpatory clause at issue and explaining that "[b]ecause of the volatile nature of financial markets, what may appear to be negligence in the purchase of securities one year may eventually turn out to be a stroke of genius in following years, and vice versa.  Thus, the allocation of risk of negligence between parties to a private contract is not patently offensive; rather, it is part and parcel of the freedom to contract in private matters."); *see also* 15 U.S.C. § 80a-17(i) (permitting such provisions).

   Accordingly, to state a viable claim for relief against MAM or any of its directors, officers, and/or employees, Plaintiffs must allege facts sufficient to show that such Defendants engaged in conduct outside the scope of the provision at issue in discharging MAM's obligations under the Advisory Agreement.   Otherwise, dismissal of claims based on conduct expressly

protected by a contractual provision is warranted under Rule 12(b)(6). *See Trumball Inv., Ltd. v. Wachovia Bank, N.A.*, 2005 WL 6148880, *4-5 (E.D. Va. Apr. 15, 2005); *CompuSpa, Inc. v. I.B.M. Corp.*, 228 F. Supp. 2d 613, 626-627 (D. Md. 2002); *Champion Home Builders Co. v. ADT Sec. Servs., Inc.*, 179 F. Supp. 2d 16, 23 (N.D.N.Y. 2001).

Plaintiffs' claims each concern investment advisory services allegedly performed for the Funds by MAM. Plaintiffs cannot overcome the limitations on liability in the Advisory Agreements, as they have failed to plead anything other than the conclusory assertion that "Defendants" acted "knowingly." (*See, e.g.,* Compl. ¶¶ 54 ("Defendants knowingly caused or allowed all of the Funds to become overly concentrated in risky illiquid securities"); 55 ("Defendants knowingly caused or allowed the Funds to invest heavily in CDOs").) Plaintiffs' allegations are not specific to MAM or any of its directors, officers, or employees, nor do Plaintiffs plead facts sufficient to demonstrate that *any* Defendant acted in anything other than a negligent manner *at most*. Without any particularized supporting facts, these bare legal conclusions do not "raise a right to relief above a speculative level," and the Complaint must be dismissed. *See Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Accordingly, Plaintiffs have failed to plead any claims that subject MAM to liability for the conduct at issue in this action and Plaintiffs' claims must be dismissed.

### III. Plaintiffs otherwise fail to state a claim for breach of fiduciary duty against the Individual Defendants as a matter of law.

Even if Plaintiffs' claims against the Individual Defendants were timely, Plaintiffs' Complaint is devoid of any factual allegations sufficient to state a claim that would overcome applicable exculpatory provisions and pleading standards. Accordingly, Plaintiffs' claims fail as a matter of law.[12]

---

[12] These same arguments would apply to claims for breach of fiduciary duty against MAM to the extent the Court were to find Maryland law allowed Plaintiffs to bring such a claim. The merits of the

### A.      Maryland law concerning alleged breaches of fiduciary duty.

Fiduciary duties owed by officers and directors under Maryland law are generally referred to as the fiduciary duties of loyalty, good faith and care. *See generally* Md. Code Ann. 2-405.1 ("A director shall perform his duties . . . (1) [i]n good faith; (2) [i]n a manner in the reasonably believes to be in the best interests of the corporation; (3) [w]ith the care that an ordinarily prudent person in a like position would use under similar circumstances"); *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 2010 WL 3448194, *65 (Aug. 27, 2010 S.D.N.Y. 2010) (officers "owe the same fiduciary duties to the corporation as do its directors.").

Pleading a breach of fiduciary duty requires more than merely disagreeing with a fiduciary's exercise of its professional and/or business judgment.  "Corporate decision-makers are held strictly to their fiduciary duties, but within the boundaries of those duties are free to act as their judgment and abilities dictate, free of *post hoc* penalties from a reviewing court using perfect hindsight." *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 698 (Del. Ch. 2005).[13]

To successfully plead a violation of the duty of care, a plaintiff must adequately allege "gross negligence," or that defendants acted with "reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason,"

---

claims related to MAM's compensation are discussed herein, to the extent the Court declines to find them untimely or otherwise barred.

[13]      To the extent the Individual Defendants served as directors of either MAM or the Funds, their conduct also must be evaluated in the context of Maryland's business judgment rule. *See* Md. Corps. & Assn's § 2-405.1(c); *cf. Robotti & Co., LLC v. Liddell*, 2010 WL 157474, *11 (Del. Ch. Jan. 14, 2010) ("The business judgment rule . . . protects directors from liability for their decisions so long as there exists 'a business decision, disinterestedness and independence, due care, good faith and no abuse of discretion and a challenged decision does not constitute fraud, illegality, *ultra vires* conduct or waste.' . . . . Put another way, under the business judgment rule, the Court will not invalidate a board's decision or question its reasonableness, so long as its decision can be attributed to a rational business purpose.") (citation omitted)

which is an "extremely stringent" standard.  *Bank of Am.*, 2010 WL 3448194, at *65; *see also*

*Sutherland v. Sutherland*, 2010 WL 1838968, *10 (Del. Ch. May 3, 2010) (same).

A plaintiff attempting to adequately allege a breach of the fiduciary duties of loyalty and

good faith, as Plaintiffs do here, faces an even higher hurdle.  To state a claim for disloyalty, a

plaintiff must allege that defendants acted in "self-interest not shared by . . . shareholders," "by

ill will."  *Bank of Am.*, 2010 WL 3448194, at *65.  "[B]ad faith encompasses not only an intent

to harm but also intentional dereliction of duty," *id.*, and "may be shown where [a director]

'intentionally acts with a purpose other than that of advancing the best interests of the

corporation.'"  *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007) (quoting *Stone v. Ritter*, 911

A.2d 362, 369 (Del. 2006)).

In addition to the foregoing standards, Maryland law and the ICA likewise permit officers

and directors of investment companies and investment advisors to be exculpated from liability

pursuant to contractual limitations on liability and corporate articles of incorporation.  As set

forth above, the Advisory Agreements pursuant to which MAM advised the Funds, exculpates

the officers, directors and employees of the Funds in the absence of "misfeasance, bad faith, or

gross negligence in the performance of the Adviser's duties, or by reason of the Adviser's

reckless disregard of its obligations and duties under this Agreement."  *See* Curley Dec. Exs. M-

P (RMH, RSF, RMA & RHY Adv. Agmts., § 12.1).  The Funds' Articles of Incorporation

likewise exculpate the Funds' officers and directors from liability "[t]o the maximum extent

permitted by applicable law (including the laws of the State of Maryland and the 1940 Act) as

currently in effect or as hereafter amended . . . [n]o director or officer of the Corporation shall be

liable to the Corporation or its stockholders for money damages. . . ."  Curley Dec. Exs. Q-T (RMH, RSF, RMA, & RHY Art. of Incorp.).[14]

Accordingly, to state a claim for breach of fiduciary duty and overcome the limitations on liability applicable to the conduct at issue, Plaintiffs must plead specific and particularized factual allegations that would support a claim that (1) each of the Individual Defendants acted with willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his office or (2) that each of the  Individual Defendant's actions, or failures to act, were the result of active and deliberate dishonesty and were material to the cause of action adjudicated in the proceeding.   As set forth below, Plaintiffs fail to plead such allegations.

**B.    Plaintiffs' Complaint fails to allege facts sufficient to satisfy Rule 9(b) in order to state a claim for breach of fiduciary duty under Maryland law.**

Plaintiffs' breach of fiduciary duty claim against the Individual Defendants is premised on allegations that Defendants engaged in intentional misconduct, including: (1) causing the Funds to invest heavily in certain types of securities; (2) failing to disclose the risk associated with investments in certain types of securities; (3) violating the Funds' concentration policy by investing more than 25% of the Funds' assets in one industry; (4) manipulating the Funds' NAV in connection with illiquid securities; (5) disseminating false and misleading information that did not disclose the foregoing; and (6) "granting" excessive compensation to MAM based on inflated financials.  (Compl. ¶ 107(a)(-(f).)   Beyond citing to allegations in pleadings filed in other proceedings, Plaintiffs' allegations are conclusory and unsupported by any facts.  And, Plaintiffs have utterly failed to specifically allege each Individual Defendant's role in the purported

---

[14]    Maryland law and the ICA permit investment companies to limit the liability of their officers and directors, so long as the limitation does not protect against liability for "willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his office."  15 U.S.C. § 80(a)-17(h); *see also* Md. Code. Ann. Corps. & Ass'ns § 2-405.2; Cts. & Jud. Proc. § 5-418.

"fraud."  With the exception of Defendants Kelsoe and Weller[15]—whose names and alleged conduct was lifted from the regulatory pleadings—the Individual Defendants are not even mentioned in the Complaint, other than to identify them by name and position.  (*See, e.g.,* Compl. ¶¶ 17-33.)

As discussed below, the Funds' offering documents and other public filings contained extensive disclosures addressing the very same information regarding the Funds' investments that Plaintiffs claim was misrepresented or omitted, and which forms the basis of Plaintiffs' breach of fiduciary duty claim against the Individual Defendants.  As the Funds explained, an investment in the Funds carried with it a high degree of risk.  That the Funds suffered losses resulting from the disclosed risks does not amount to a breach of fiduciary duty on the part of any of the Individual Defendants.  Plaintiffs, however, offer nothing more and certainly do not plead facts to support this claim with the particularity required by Rule 9(b).

1.    **The Funds disclosed their investments in ABS and MBS and other securities and the risk associated with investments in such securities.**

Plaintiffs assert that Defendants breached their fiduciary duties by causing the Funds to improperly invest in MBSs and ABSs and causing the Funds to conceal such investments from investors.  This assertion is contradicted directly by the Funds' registration statements and other public filings.  The Funds' prospectuses each stated that the Funds' investment strategy was to invest in these specific types of securities, among others.  *See* Curley Dec. Exs. A (RMH Prosp. at 15-19), C (RSF Prosp. at 16-20), E (RMA Prosp. at 16-21), G (RHY Prosp. at 17-22).)

These same offering documents likewise disclosed the risk associated with an investment in the Funds.  The cover page of each prospectus unequivocally states *in bold type* that "[t]he Fund's investment strategy of investing the majority of its total assets in below investment grade

---

[15]    Plaintiffs mention Defendants Sullivan and Wood in the context of stating that they have been sued by state regulators.  (Compl. ¶ 105.)

debt securities and its expected use of leverage *involve a high degree of risk.  Stockholders could lose some or all of their investment*."  Curley Dec. Exs. A, C, E, & G (RMH, RMA, RSF, & RHY Prosp. at Cover Page) (emphasis supplied).  (*See also supra* 5-6 (discussing the fact that the Funds could invest a large percentage of their assets in below investment grade securities).)[16]

In addition to the risks of an investment in the Funds, the Funds' prospectuses disclosed the risks associated with the specific types of securities in which the Funds would invest, including a discussion of risks inherent in below investment grade securities in general, as well as risks inherent in the specific types of securities in which the Funds such as "Mortgage-Backed Securities Risk," "Asset-Backed Securities Risk," "Illiquid and Restricted Securities Risks," and "Derivatives Risk."  Curley Dec. Exs. A (RMH Prosp. at 23-29), E (RMA Prosp. at 25-31), C (RSF Prosp. at 24-31), G (RHY Prosp. at 26-33).[17]  These disclosures explained that the securities in the Funds' portfolios could be sensitive to economic downturns, which in turn could adversely affect the Funds' NAV.

For example, the Funds disclosed that "[a]dverse changes in economic conditions are more likely to lead to a weakened capacity of a below investment grade issuer to make principal payments and interest payments," and that "[t]he secondary market for below investment grade securities may not be as liquid as the secondary market for more highly rated securities, a factor that may have an adverse effect on the Fund's ability to dispose of a particular security when necessary to meet its liquidity needs."  Curley Dec. Ex. A (RMH Prosp. at 25); *see also id.* Ex. C

---

[16]     Each of the Funds' annual, semi-annual, and quarterly reports listed by name each security held by the Funds, categorized these securities by type, and disclosed the percentage of each Fund's assets that was invested in each type of security, including MBSs, ABSs, and CDOs.  *See, e.g.,* Curley Dec. Ex. J (Sept. 2006 Consol. Semi-Ann. Rpt. at 6-19, 24-37, 42-54, 58-71).  These asset schedules appear in the SEC filings referenced by Plaintiffs in the Complaint.  *See, e.g.,* Curley Dec. Exs. I (2006 Consol. Ann. Rpt.), J (Sept. 2006 Consol. Semi-Ann. Rpt.), K (2007 Consol. Ann. Rpt.).

[17]     These specific risks were also summarized at the very beginning of each prospectus.  *See, e.g.,* Curley Dec. Ex. A (RMH Prosp. at 3-11).  They were also discussed in the Funds' SAIs, which were incorporated by reference into the Funds' prospectuses.  *See also id.* Ex. B (RMH SAI at 2-26); Ex. D (RSF SAI at 2-27); Ex. F (RMA SAI at 3-28); Ex. H (RHY SAI at 2-37).

(RSF Prosp. at 26-27); Ex. E (RMA Prosp. at 26-27); Ex. G (RHY Prosp. at 28-29). "Factors having an adverse impact on the market value of below investment grade securities may have an adverse effect on the Fund's net asset value and the market value of its common shares." *Id.*

The Funds also disclosed that certain types of securities—including MBS, ABS, and derivatives—were subject to credit and liquidity risks. The Funds disclosed that "[t]he value of mortgage-backed securities may . . . change due to shifts in the market's perception of issuers . . . . In addition, mortgage-backed securities are subject to the credit-risk associated with the performance of the underlying mortgage properties." Curley Decl. Ex. A (RMH Prosp. at 26); *see also id.* Ex. C (RSF Prosp. at 27); Ex. E (RMA Prosp. at 27); Ex. G (RHY Prosp. at 29-30).[18]

Even the language from the Funds' public filings that Plaintiffs quote in the Complaint expressly referred to the Funds' strategy of investing in riskier, out of favor debt securities. (Compl. ¶ 64 (quoting June 7, 2006 Form N-CSR, which noted a "scarcity of attractive investment opportunities," characterizing it as the "challenge [the Funds] face today," and noting that with regard to ABSs and MBSs, "[t]he prospect of continued rate hikes . . . and the lack of available yield in the fixed income market have forced investors into some of the more 'off the run' issues that we have used effectively in the high income fund").) Moreover, contrary to Plaintiffs' assertions, as early as 2006, the Funds disclosed that problems in the housing market were placing pressure on the Funds' mortgage-related holdings. (*Id.* ¶ 66 (quoting Dec. 7, 2006

---

[18]     *See also* Curley Decl. Ex. A (RMH Prosp. at 26 ("Payment of interest and repayment of principal on asset-backed securities may be largely dependent upon the cash flows generated by the assets backing the securities . . . . Asset-backed security values may also be affected by the creditworthiness of the servicing agent for the pool, the originator of the loans or receivables or the entities providing the credit enhancement."); at 28 ("[C]ertain derivatives may be less liquid and more difficult to value than others. Furthermore, the ability to successfully use certain derivatives depends on [MAM's] ability to predict pertinent market movements, which cannot be assured. Thus, the use of derivatives may result in losses greater than if they had not been used, may require the Fund to sell or purchase portfolio securities at inopportune times or for prices other than current market values, may limit the amount of appreciation the Fund can realize on an investment or may cause the Fund to hold a security that it might otherwise sell.")). *See also id.* Ex. C (RSF Prosp. at 27, 30); Ex. E (RMA Prosp. at 27-28, 30); Ex. G (RHY Prosp. at 30, 32).

Semi-Annual Report Form N-CSRS, which noted that "[i]n the asset-backed sector . . . concerns over the slow down in housing and real estate in general caused credit spreads to expand and acted to depress overall performance from our portfolio of mortgage related securities").) Plaintiffs' own allegations demonstrate that the Funds disclosed the very information Plaintiffs claim was concealed from them.

It certainly does not amount to a breach of any fiduciary duty owed to the Funds by any of the Individual Defendants for the Funds to have invested in exactly the types of securities identified in the Funds' offering documents.  Moreover, such investments by the Funds certainly do not reflect "self-interest," "ill-will" or deliberate disregard to the shareholders of the type required to state a claim for breach of fiduciary duty.   At bottom, Plaintiffs have attempted to plead a breach of fiduciary duty simply by alleging that investments subject "to a high degree of risk" experienced losses.  Such efforts fail as a matter of law to state a claim.

> **2.      Plaintiffs do not plead a breach of fiduciary duty resulting from an alleged violation of the Funds' industry concentration restriction.**

Plaintiffs allege that the Individual Defendants breached their fiduciary duties by causing the Funds allegedly to violate the Funds' concentration policy by investing more than 25% of the Funds' assets in one industry, suggesting that CDOs and MBSs constitute an "industry" rather than a type of security.  As an initial matter, Plaintiffs do not allege any facts to support a claim that any of the Individual Defendants knowingly and intentionally purchased securities in a particular industry that would have violated the Funds' concentration restriction, when such purchases occurred, or who made such purchases on behalf of the Funds.  (*See generally*  Compl. ¶¶ 53-59.)  For this reason, Plaintiffs' allegations fail as a matter of law under Rule 9(b).

This conclusion is further confirmed when the actual investment restriction is considered. The Funds' concentration restriction states that the Funds may not "purchase the securities of any issuer (other than securities issued or guaranteed by the U.S. government or any of its agencies

or instrumentalities) if, as a result, 25% or more of the Fund[s'] total assets would be invested in the securities of companies the principal business activities of which are in the same industry." Curley Decl. Ex. B (RMH SAI at 1); Ex. D (RSF SAI at 1); Ex. F (RMA SAI at 2); Ex. H (RHY SAI at 2).  With respect to this restriction, Plaintiffs allege that Defendants mismanaged the Funds by investing "more than 25% of their assets in the same industry."  (Compl. ¶ 54.)

As alleged, however, Plaintiffs contend that the Funds invested more than 25% of their assets in certain *types of securities*, not securities issued by companies in the same industry. (*See, e.g., id.* ¶ 55 ("Defendants knowingly caused or allowed the Funds to invest heavily in CDOs, which are a type of structured ABSs whose value and payments are derived from a portfolio of fixed-income underlying assets."); ¶ 56 ("[E]ach of the Funds invested more than 25% of its assets in MBSs.).)  The applicable restriction prohibits concentration in securities issued by "companies . . . in the same industry," not concentration in certain types of securities.

Even if such securities constituted an "industry," Plaintiffs plead no facts showing that any of the Individual Defendants knowingly and intentionally caused the Funds to purchase securities in a particular industry that caused the Funds to violate this policy.  (*See* Compl. ¶¶ 53-59 (failing to include any facts regarding any purchases by the Funds).)  It is equally conceivable that an increase in the percentage of the Funds' holdings in one industry resulted from a commensurate decrease in the percentage of the Funds' holdings in another industry (*i.e.,* from the Funds' sale of such assets), rather than the Funds' purchases of securities in a particular "industry" in violation of the applicable concentration restriction.  *See, e.g.,* Curley Decl. Ex. B (RMH SAI at 1) ("[A]ny later increase or decrease resulting from a change in values, net assets or other circumstances will not be considered in determining whether the investment complies with the Fund's investment limitations.").  This equally plausible possibility renders Plaintiffs'

factual allegations insufficient to state a claim that any Individual Defendants breached fiduciary duties owed to the Funds.  *See Iqbal*, 129 S. Ct. at 1949.

### 3.    Plaintiffs do not plead a breach of fiduciary duty stemming from an alleged manipulation of the Funds' NAV.

Plaintiffs allege that the Individual Defendants breached fiduciary duties owed to the Funds by "knowingly fail[ing] to price the Funds' illiquid investments, including MBSs and CDOs," at "fair value."  Plaintiffs devote twenty-three paragraphs in their Complaint to such allegations.  Absent from these paragraphs, however, are any allegations identifying a single illiquid security allegedly mis-valued, the date on which any such mis-valuation occurred, or any facts showing that any of the Individual Defendants knowingly and intentionally caused the Funds to mis-value such a security.  (*See generally* Compl. ¶¶ 72-94.)  The absence of such allegations renders Plaintiffs' claims insufficient as a matter of law.  *See, e.g., In re Barclays Bank PLC Sec. Litig.*, 2011 WL 31548, at *8 ("'[T]he value of such assets is a matter of judgment and opinion' . . . . Since [Defendants'] valuations and write downs were subjective, the . . . Complaint must adequately allege that [Defendants] did not truly believe its own valuation." (quoting *Fait v. Regions Fin. Corp.*, 712 F. Supp. 2d 117, 122-123 (S.D.N.Y. 2010)).

Rather than plead actual facts, Plaintiffs parrot allegations made in regulatory proceedings, news reports and press releases.  As discussed previously, such allegations are insufficient to state a claim for breach of fiduciary duty under Rule 9(b) with respect to any of the Individual Defendants.  More importantly, Plaintiffs do not and cannot tie any of the allegations in the regulatory proceedings regarding valuation to any securities held by the Funds in this action.  While the regulatory proceedings to which Plaintiffs refer do involve the Funds at issue here, those proceedings also involve three other mutual funds, as well.  None of the allegations cited by Plaintiffs is specific to the valuation of securities to *any* of the Funds at issue

in this action.  Rule 9(b) requires far more than what Plaintiffs have alleged here to state a claim for knowing and intentional breach of fiduciary duty.

> ### 4. The balance of Plaintiffs' allegations does not state a claim for breach of fiduciary duty under Maryland law.

Plaintiffs otherwise allege that the Individual Defendants breached fiduciary duties owed to the Funds by virtue of the dissemination of allegedly false and misleading statements.  (*See generally* Compl. ¶¶ 60-71.)  Plaintiffs quote extensively from the Funds' public filings and offer only the conclusory statement that these disclosures were false and misleading.  As with Plaintiffs other allegations, this conclusion appears to be premised not on facts, but on the mere existence of allegations in regulatory proceedings.  Moreover, Plaintiffs do not identify facts demonstrating what was false about the Funds' filings, that any of the Individual Defendants knew whether such statements were false, or how any of the Individual Defendants knowingly and intentionally caused the Funds to make false filings.  This is insufficient under Rule 9(b).

Finally, Plaintiffs refer to "sales materials" that were allegedly "false and misleading." (*See* Compl. ¶ 62.)  Plaintiffs cite yet again to allegations made in regulatory proceedings regarding statements allegedly made in response to unidentified "inquiries."  Without any facts regarding the "inquiries" to place these alleged responses in context, these allegations are meaningless and certainly do not support a claim for breach of fiduciary duty by any of the Individual Defendants.[19]

---

[19] Moreover, the statements at issue are clearly statements of opinion regarding the risks and effects of market conditions on the Funds.  (Compl. ¶ 64 ("In [Kelsoe's] and my *opinion*," "I *assume* we are to stay the course with our clients . . . . I *think* so," "[Kelsoe] *thinks* we may be close to the end of repricing," "I *think* this is a buying opportunity") (emphasis supplied).)  In order for statements of opinion to be considered false and misleading, Plaintiffs must plead facts demonstrating that the statements in question were false and misleading when made.  *In re Barclays Bank PLC Sec. Litig.*, 2011 WL 31548, at *15 ("Subjective opinions 'are only actionable . . . if a complaint alleges that the speaker did not truly have the opinion at the time it was made public'" (quoting *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010)).  Plaintiffs have pleaded no facts demonstrating that the speakers at issue did not actually hold these opinions at the time these statements were made.

**5.** **Plaintiffs' may not bring a claim against the Individual Defendants based on MAM's alleged violation of § 36(b) of the ICA.**

To the extent Plaintiffs are alleging that the Individual Defendants breached their fiduciary duty by "granting" excessive compensation to MAM in violation of § 36(b) of the ICA, such a claim necessarily fails as a matter of law. (Compl. ¶ 107(f).) As set forth *supra*, the ICA does not permit Plaintiffs to premise claims regarding the reasonableness of MAM's fee on a hindsight analysis of the Funds' performance, and in any event Plaintiffs have pleaded no facts demonstrating that the values of securities in the Funds' portfolios were ever inappropriately inflated.

## IV.  **Plaintiffs' claims must be dismissed with prejudice.**

Plaintiffs claims should be dismissed with prejudice. To the extent Plaintiffs' claims are time-barred, Plaintiffs are not entitled to leave to amend. *See Risser v. Metro Gov't of Nashville*, 2009 WL 1974747, at *5 (M.D. Tenn. July 7, 2009). With regard to the claims asserted against MAM, amendment would be futile because these claims would fail as a matter of law under any set of facts. *See In re Reciprocal of Am. Sales Practices Litig.*, 2007 WL 2900282, *7 (W.D. Tenn. Sept. 28, 2007) (denying leave to amend where there is no evidence that "another bite at the apple would yield a different result"). Furthermore, no cause of action against MAM for breach of fiduciary duty exists under Maryland law, MAM did not serve as the Funds' investment adviser during the one-year period specified by § 36(b) of the ICA, and the existence of a contract between MAM and the Funds bars an unjust enrichment claim.

Finally, these Plaintiffs already have amended their complaints once in filing the Consolidated Complaint at issue here and have had nearly a year to compile claims and allegations that are viable as a matter of law, yet have failed to do so. Rather, Plaintiffs have continued to rely on conclusory statements of law and allegations lifted from pleadings in other actions. Plaintiffs are not entitled to another opportunity to plead these claims and this action

28

should be dismissed with prejudice.  *See Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) ("Denial [of leave to amend] may be appropriate . . . where there is . . . 'repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" (quoting *Foman v. Davis*, 371 U.S. 178 (1962)).

## **CONCLUSION**

Because Plaintiffs' claims fail as a matter of law, MAM and the Individual Defendants respectfully request that the Court dismiss Plaintiffs' Complaint.

DATED this 24th day of January 2011.

Respectfully submitted,

BASS, BERRY & SIMS PLC

By: /s/ Matthew M. Curley
    Michael L. Dagley
    Matthew M. Curley
    Britt K. Latham
    W. Brantley Phillips, Jr.
    150 Third Avenue South; Suite 2800
    Nashville, TN 37201
    (615)742-6200

    *Attorneys for Defendant Morgan Asset Management, Inc.*

SUTHERLAND, ASBILL & BRENNAN, LLP

By: /s/ S. Lawrence Polk
    S. Lawrence Polk
    999 Peachtree Street N.E.
    Atlanta, GA 30309-3996

    *Attorney for Allen B. Morgan, Jr., J. Kenneth Alderman, Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, Michele F. Wood, James C. Kelsoe, Jr., Thomas R. Gamble and David H. Tannehill*

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2011, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

**BRAMLETT LAW OFFICES**
PAUL KENT BRAMLETT
ROBERT PRESTON BRAMLETT
2400 Crestmoor Road
P.O. Box 150734
Nashville, TN

**SUTHERLAND ASBILL & BRENNAN, LLP**
S. LAWRENCE POLK
999 Peachtree Street NE
Atlanta, GA  30309

**BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP**
ERIC L. ZAGAR
ROBIN WINCHESTER
TARA P. KAO
280 King of Prussia Road
Radnor, PA 19087

**PURSLEY LOWERY MEEKS LLP**
R. HAL MEEKS
ROBIN A. BESAW
260 Peachtree Street NW
Atlanta, GA 30303

**PAUL HASTINGS JANOFSKY & WALKER LLP**
KEVIN C. LOGUE
75 E. 55th Street
New York, NY  10022

**K&L GATES LLP**
JEFFREY B. MALETTA
NICHOLAS TERRIS
NICOLE A. BAKER
1601 K Street, NW
Washington, D.C.  20006-1600

/s/ Matthew M. Curley

9057707.9

30