UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

|  |  |  |
|---|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) ) | Case No. 2:09-md-02009-SHM |
|  | ) | Judge Samuel H. Mays, Jr. |
| This Document Relates to: | ) ) | Magistrate Judge Diane K. Vescovo |
| *In re Helios Closed-End Funds Derivative Litigation*, No. 2:10-cv-02188-SHM-tmp | ) ) ) ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED DERIVATIVE COMPLAINT BY MORGAN ASSET MANAGEMENT, INC. AND THE INDIVIDUAL DEFENDANTS**

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................................ 4

        A.      The Parties ......................................................................................... 4

                1.      Plaintiffs and Nominal Defendant Funds ..................................... 4

                2.      Morgan Asset Management ........................................................ 4

                3.      The Officer Defendants .............................................................. 5

                4.      The Director Defendants ............................................................ 7

        B.      Defendants Caused the Funds to Become Overconcentrated in Risky,
                Illiquid Securities in Violation of the Funds' Offering Materials ................ 7

        C.      Defendants' Dissemination of False and Misleading Statements ............ 9

        D.      Defendants' Manipulation of Net Asset Values ................................... 11

        E.      Revelation of Misconduct ................................................................... 13

        F.      Plaintiffs Seek to Recover Damages from MAM, the Officer Defendants
                and the Director Defendants on Behalf of the Funds ............................ 14

III.    ARGUMENT ................................................................................................... 15

        A.      The Motion Should Be Denied Because the MAM Defendants Have
                Improperly Converted Their "Motion to Dismiss" to a Motion for
                Summary Judgment ........................................................................... 15

        B.      Should the Court Consider the Motion, the Applicable Pleading Standard
                Under Federal R. Civ. P. 12(b)(6) ....................................................... 17

        C.      Plaintiffs Have Adequately Stated Claims Against MAM, the Officer
                Defendants and the Director Defendants for Breaches of Fiduciary Duty
                Under Maryland Law .......................................................................... 19

        D.      Plaintiffs Have Stated a Claim Against MAM for Unjust Enrichment
                Under Maryland Law .......................................................................... 24

        E.      Plaintiffs' Claims for Breach of Fiduciary Duty and Unjust Enrichment
                Are Timely ........................................................................................ 26

F.    Defendants' Misconduct Is Not Exculpated by the Advisory Agreements, Investment Company Act of 1940, or Otherwise ................................................ 30

IV.    IF NECESSARY, THE PLAINTIFFS SHOULD BE GIVEN LEAVE TO AMEND .................................................................................................................. 32

V.    CONCLUSION............................................................................................................ 33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*,
   554 F.Supp.2d 538 (D. Del. 2008)........................................................................19

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*,
   665 A.2d 1038, 1995 Md. LEXIS 140 (Md. 1995)...............................................19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).............................................................................................16

*Anderson v. Young Touchstone Co.*,
   735 F. Supp. 2d 831 (W.D. Tenn. 2010).............................................................32

*Balt. City. Bd. of Sch. Comm'rs v. Koba Inst., Inc.*,
   5 A.3d 60, 72, 2010 Md. LEXIS 128 (Md. Ct. App. 2010)................................27

*Berry & Gould, P.A. v. Berry*,
   757 A.2d 108, 2000 Md. LEXIS 455 (Md. 2000)................................................24

*Bon Air Hotel, Inc. v. Time, Inc.*,
   376 F.2d 118 (5th Cir. 1967), *certiorari denied,* 393 U.S. 815 (1968) .................32

*County Comm'rs  v. J. Roland Dasheill & Sons, Inc.*,
   747 A.2d 600, 2000 Md. LEXIS 43 (Md. 2000)..................................................25

*Cullen v. New York State Civil Serv. Comm'n*,
   435 F. Supp. 546 (E.D.N.Y. 1977) .....................................................................33

*Davis v. Operation Amigo, Inc.*,
   378 F.2d 101 (10th Cir. 1967) .............................................................................32

*Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund*,
   624 A.2d 1199, 1993 Del. LEXIS 217 (Del. 1993) ............................................18

*Emerald Partners v. Berlin*,
   726 A.2d 1215, 1999 Del. LEXIS 97 (Del. 1999) ..............................................31

*Faller v. Faller*,
   No. DKC 09-0889, 2010 WL 1141202 (D. Md. March 22, 2010) .......................20

*Freidus v. ING Groep N.V.*,
   736 F. Supp. 2d 816 (S.D.N.Y. 2010)..................................................................27

*Frieri v. City of Chicago*,
   127 F. Supp. 2d 992 (N.D. Ill. 2001) ..................................................................17

*Goforth v. Owens*,
 766 F.2d 1533 (11th Cir. 1985) ................................................................32

*Grassmueck v. Barnett*,
 281 F. Supp. 2d 1227 (W.D. Wash. 2003) ...............................................18

*Hensley Mfg. v. Propide, Inc.*,
 579 F.3d 603 (6th Cir. 2009) ...................................................................17

*Hill v. Cross Country Settlements LLC*,
 936 A.2d 343, 2007 Md. LEXIS 721 (Md. 2007)......................................24

*Hooksett School Dist. v. W.R. Grace & Co.*,
 617 F. Supp. 126 (D.N.H. 1984)...............................................................21

*In re Barclays Bank PLC Sec. Litig.*,
 No. 09 Civ. 1989 (PAC), 2011 WL 31548 (S.D.N.Y. Jan. 5, 2011) ......27

*In re Connetics Corp. Secs. Litig.*,
 542 F. Supp. 2d 996 (N.D. Cal. 2008) ....................................................23

*In re Cylink Secs. Litig.*,
 178 F. Supp. 2d 1077 (N.D. Cal. 2001) ...................................................23

*In re Mutual Fund Inv. Litig.*,
 403 F. Supp. 2d 434 (D. Md. 2005) .........................................................18

*In re Sec. Capital Assurance, Ltd. Sec. Litig.*,
 729 F. Supp. 2d 569 (S.D.N.Y. 2010)......................................................27

*In re Textainer P'ship Secs. Litig.*,
 No. C-05-0969 MMC, 2006 U.S. Dist. LEXIS 32896 (N.D. Cal. May 15, 2006) ................18

*In re Tower Air, Inc.*,
 416 F.3d 229 (3d Cir. 2005)......................................................................31

*In re Tyson Foods, Inc.*,
 No. 1106-C, 2007 Del. Ch. LEXIS 120 (Del. Ch. Aug. 15, 2007).........23

*Indep. Prod. Corp. v. Loew's Inc.*,
 283 F.2d 730 (2d Cir. 1960)......................................................................33

*Int'l B'hood of Teamsters v. Willis Coroon Corp.*,
 802 A.2d 1050, 2002 Md. LEXIS 499 (Md. 2002)...................................20

*IOTEX Commc'n, Inc. v. Defries*,
 No. 15817, 1998 Del. Ch. LEXIS 236 (Del. Ch. Dec. 21, 1998) ...........21

*Jackson Nat. Life Ins. Co. v. Kennedy*,
    741 A.2d 377, 1999 WL 550391 (Del. Ch. 1999) ................................................................18

*Jones v. Koons Auto., Inc.*,
    752 F. Supp. 2d 670 (D. Md. 2010) ........................................................................25, 26

*Kahn ex rel. Dekalb Genetics Corp. v. Roberts*,
    No. 12,324, 1994 Del. Ch. LEXIS 33 (Del. Ch. Feb. 28, 1994) ......................................31

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ................................................................................................19

*Kann v. Kann*,
    589 A.2d 944, 1991 Md. LEXIS 92 (Md. 1997) ..............................................................20

*Ladzinski v. MEBA Pension Trust*,
    951 F. Supp. 570 (D. Md. 1997) ................................................................................27

*Loew's Inc. v. Makinson*,
    10 F.R.D. 36 (N.D. Ohio 1950) ................................................................................21

*Malone v. Brincat*,
    722 A.2d 5, 10, 1998 Del. LEXIS 495 (Del. 1998) ......................................................23, 24

*Marks v. Shell Oil Co.*,
    830 F.2d 68 (6th Cir. 1987) ................................................................................32

*Martin Marietta Corp. v. Gould, Inc.*,
    70 F.3d 768 (4th Cir. 1995) ................................................................................27

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*,
    848 F.2d 674 (6th Cir. 1988) ........................................................................... passim

*Miller v. Glanz*,
    948 F.2d 1562 (10th Cir. 1991) ................................................................................15

*Moses v. Providence Hosp. Med. Centers, Inc.*,
    561 F.3d 573 (6th Cir. 2009) ................................................................................16

*MTBR LLC v. D.R. Horton, Inc.*,
    No. RDB-07-3363, 2008 U.S. Dist. LEXIS 66697 (D. Md. Aug. 22, 2008) ..........................26

*Olson v. Regions Bank*,
    No. 09-2017, 2010 U.S. Dist. LEXIS 62791 (W.D. Tenn. June 23, 2010) ..........................32

*Pease v. Wachovia SBA Lending, Inc.*,
    6 A.3d 867, 889 n.13, 2010 Md. LEXIS 618 (Md. 2010) ................................................19

*Phoenix Techn., Inc. v. TRW, Inc.*,
154 F.R.D. 122 (E.D. Pa. 1994)................................................................32

*RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*,
640 F. Supp. 2d 660 (D. Md. 2009).........................................................26

*Rebel Motor Freight, Inc. v. Freeman Drywall Co.*,
914 F. Supp. 1516 (W.D. Tenn. 1994).....................................................16

*Sanders v. Thrall Car Mfg. Co.*,
582 F. Supp. 945 (S.D.N.Y. 1983) ..........................................................32

*Sanders v. Wang*,
No. 16640, 1999 Del Ch. LEXIS 203 (Del. Ch. Nov. 8, 1999)...............31

*SEC v. Apuzzo*,
No. 3:07cv1910, 2010 WL 5359928 (D. Conn. 2010) .............................18

*Shenker v. Laureate Educ., Inc.*,
983 A.2d 408, 2009 Md. LEXIS 837 (Md. 2009)...............................19, 20

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002)..................................................................................17

*Tal v. Hogan*,
453 F.3d 1244 (10th Cir. 2006) ..........................................................16, 25

*Theilmann v. Rutland Hosp. Inc.*,
455 F.2d 853 (2d Cir. 1972).....................................................................32

*U.S. ex. rel. SNAPP, Inc. v. Ford Motor Co.*,
532 F.3d 496 (6th Cir. 2008) ...................................................................18

*U.S. for Benefit and Use of Ehmcke Sheet Metal Works v. Wausau Ins. Companies*,
755 F. Supp. 906. (E.D. Cal. 1991)..........................................................32

*White's Landing Fisheries, Inc. v. Buchholzer*,
29 F.3d 229 (6th Cir. 1994) .....................................................................16

*Windsor v. The Tennessean*,
719 F.2d 155 (6th Cir.1983), *cert. denied*, 469 U.S. 826 (1984)............17

*York Linings v. Roach*,
16622-NC, 1999 Del. Ch. LEXIS 160 (Del. Ch. July 28, 1999) .............18

## STATUTES AND RULES

15 U.S.C. § 77m...........................................................................................27

Md. Code Ann., Corps. & Ass'ns § 2-405.1 .......................................................................20

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ....................................................................27, 30

Md. Code Ann., Cts. & Jud. Proc. § 5-418 ....................................................................30, 31

Fed. R. Civ. P. 8(a) .............................................................................................................17

Fed. R. Civ. P. 12(b)(6) ........................................................................................3, 15, 16, 17

Fed. R. Civ. P. 15(a) ............................................................................................................32

Fed R. Civ. P. 56 .....................................................................................................3, 15, 16

Plaintiffs Cecil Cannaday ("Cannaday") and Ronald Godfrey ("Godfrey") (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in Opposition to the Motion to Dismiss Plaintiffs' Consolidated Derivative Complaint by Morgan Asset Management, Inc. and the Individual Defendants (the "Motion").  For the reasons set forth herein, the Motion should be dismissed in its entirety.

## I. <u>INTRODUCTION</u>

The facts and claims alleged in this case are quite simple.  The Funds[1], the real parties in interest in this derivative action, have suffered millions of dollars in damages as a result of the egregious misconduct by their former investment adviser, defendant Morgan Asset Management ("MAM"), and certain officers for the Funds (who were also employees of MAM and/or its affiliates) and the former directors of the Funds.  The Defendants[2] were required to invest the assets of the funds in securities consistent with the Funds' respective investment objectives and policies which were specifically outlined in the Funds' Offering Materials,[3] filed with the Securities Exchange Commission ("SEC") and disseminated to their shareholders.  However, rather than complying with these guidelines as they were required to, the Defendants breached their fiduciary duties owed to the Funds by causing the Funds to make investments in violation of the Funds' Offering Materials and by overstating Net Asset Values ("NAVs") to conceal the

---

[1] The term "Funds" refers collectively to nominal defendants Helios Advantage Income Fund, Inc., formerly known as RMK Advantage Income Fund, Inc. ("Helios Advantage"), Helios High Income Fund, Inc., formerly known as RMK High Income Fund, Inc. ("Helios High"), Helios Multi-Sector High Income Fund, Inc., formerly known as RMK Multi-Sector High Income Fund, Inc. ("Helios Multi-Sector"), and Helios Strategic Income Fund, Inc., formerly known as RMK Strategic Income Fund, Inc. ("Helios Strategic").

[2] The term "Defendants" refers collectively to MAM, the Officer Defendants (as defined herein) and the Director Defendants (as defined herein).

[3] The term "Offering Materials" refers collectively to the Funds' prospectuses (the "Prospectuses"), statements of additional information ("SAIs") and all exhibits thereto.

Funds' massive losses as a result of these illegal investments while conveniently failing to inform its shareholders of the foregoing.  As a result of this misconduct, the Funds' accountants informed them that four years of financial statements should no longer be relied upon, and, ultimately, the Funds were forced to restate their financial statements by over $37 million and took massive reductions in the Funds' net assets.

In November 2009 Plaintiffs made demands (the "Demands") upon the Board of Directors of the Funds (the "Board") to take action against Defendants for engaging in the misconduct described above. *See* Exhibits A-F to Plaintiffs' Verified Shareholder Derivative Complaint, filed on December 6, 2010 (the "Complaint") (the Demands).  Thereafter, on March 18, 2010, Plaintiffs filed the instant shareholder derivative action on behalf of the Funds to recover damages resulting from Defendants' misconduct of breaching their fiduciary duties of loyalty and good faith owed to the Funds. Specifically, Plaintiffs allege that in breach of their fiduciary duties, Defendants knowingly: (a) caused the Funds to invest heavily in asset-backed securities ("ABSs"), mortgaged-backed securities ("MBSs"), collateralized debt obligations ("CDOs") and other illiquid securities in violation of the Funds' Offering Materials; (b) concentrated more than 25% of the Funds' assets in one industry, also in violation of the Funds' Offering Materials; (c) failed to disclose to the Funds' shareholders the true extent of the Funds' exposure to these securities and the risks associated therewith; and (d) overstated the values of the ABSs, MBSs, CDOs and other illiquid and subprime securities the Funds held, thereby overstating the Funds' NAVs.  In addition, defendant MAM was unjustly enriched by its receipt of excessive advisory fees from the Funds based on the improperly inflated NAVs.

These Defendants were entrusted with the helm of the Funds, however, while in that position, they caused millions of dollars of harm to the Funds. The Defendants' egregious behavior certainly does not comport with proper conduct for any fiduciary.

Defendants' blatant misconduct is underscored by the multiple investigations and lawsuits that have been filed against them by a number of governmental agencies. In April 2010, months after Plaintiffs had made their Demand and filed this Action, the SEC, the Financial Industry Regulatory Authority ("FINRA") and securities regulators in Alabama, Kentucky, Mississippi and South Carolina filed lawsuits against, *inter alia*, defendants MAM, Kelsoe, Weller, Wood and Sullivan, for their violations of various securities laws and regulations.

The MAM Defendants (as defined herein), in their Motion, make a number of arguments why this Action should be dismissed, none of which have any merit. First, the MAM Defendants have improperly attached several hundred pages of documents to their Motion, including defense counsel's self-serving affidavit. By attaching such documents, the MAM Defendants converted their submission into a motion for summary judgment, to be evaluated under Fed R. Civ. P. 56, instead of Fed. R. Civ. P. 12(b)(6). Therefore, as a matter of law, the Motion must be denied as, only after discovery has been taken can the Court even consider such a motion. Second, at this motion to dismiss stage, Plaintiffs need only "a short and plain statement" of the claims made by "simple, concise, and direct allegations." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). Plaintiffs' Complaint certainly meets (and exceeds) this rather low pleading standard as the Complaint contains all of the facts and allegations necessary to plead claims for breach of fiduciary duty and unjust enrichment under Maryland law. Therefore, for all the reasons set forth herein, the Motion must be denied.

II.      **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

    A.      **The Parties**

        1.      **Plaintiffs and Nominal Defendant Funds**

Plaintiffs are shareholders of the Funds.  Specifically, plaintiff Godfrey is a shareholder of Helios Advantage, Helios Multi-Sector and Helios Strategic, while plaintiff Cannaday is a shareholder of Helios Advantage, Helios High and Helios Strategic.  ¶¶ 14-15.[4]

The nominal defendant Funds are closed-end management investment companies incorporated under the laws of the state of Maryland.  ¶ 16.

        2.      **Morgan Asset Management**

Defendant MAM served as the Funds' investment adviser during the period of wrongdoing alleged herein.  ¶ 34.  As the investment adviser to the Funds, MAM was required to provide the Funds with investment research and advice and furnish the Funds with investment programs consistent with the Funds' respective investment objectives and policies, subject to the supervision of the Funds' Board.  ¶ 50.  MAM determined which portfolio securities would be purchased or sold, arranged for the placing of orders for the purchase or sale of portfolio securities, selected brokers or dealers to place those orders, maintained books and records with respect to the Funds' securities transactions and reported to the Board on the Funds' investments and performance.  *Id*.  Pursuant to the investment advisory agreements between each Fund and MAM, the Funds were to pay MAM a monthly fee, equal on an annual basis to 0.65% of the Funds' average daily managed assets, as well as an additional 0.15% thereof under an administrative agreement.  ¶ 51.

---

[4] Unless otherwise noted, all references to "¶__" herein refer to such paragraphs of Plaintiffs' Complaint.

Along with its affiliate, Morgan Keegan & Co., Inc. ("Morgan Keegan"), a registered broker/dealer that exclusively distributed shares of the Funds, and certain of the Officer Defendants, defendant MAM is a defendant in administrative proceedings brought by the SEC and FINRA, as well as a joint administrative action brought by the states of Alabama, Kentucky, Mississippi and South Carolina (the "Joint State Administrative Proceedings"), relating to the conduct complained of herein.[5]  ¶¶ 9-10, 103-105.

### 3.  The Officer Defendants

Defendant James C. Kelsoe, Jr. ("Kelsoe") served as a Senior Portfolio Manager for the Funds from 2004 through July 2008.  ¶ 17.  Defendant Kelsoe was also an employee of MAM and Morgan Keegan.   ¶ 103.   Day-to-day management of the Funds' portfolios was the responsibility of a team led by defendant Kelsoe.  ¶ 50.  The SEC's press release announcing the initiation of administrative proceedings against Kelsoe described him as one of the "scheme['s] two architects – a portfolio manager responsible for lies to investors about the true value of the assets in his funds."  ¶ 103.  Defendant Kelsoe is also a defendant in the Joint State Administrative Proceedings.  ¶ 105.  As part of defendant Kelsoe's team, defendant David H. Tannehill ("Tannehill") served as an Assistant Portfolio Manager of the Funds from 2006 through 2008.  ¶ 29.

Defendant J. Thompson Weller ("Thompson Weller") served as Treasurer of the Funds from 2006 through 2008 and as Assistant Secretary and director of the Funds from 2003 through 2008.  ¶ 31.  Defendant Thompson Weller also served as Morgan Keegan's Controller and Head of  Fund  Accounting  and  on  the  Valuation  Committee  that  purportedly  oversaw  Fund

---

[5] As used herein, the term "SEC Order" refers to the Order Instituting Administrative and Cease-and-Desist Proceedings issued by the SEC on April 7, 2010.  ¶ 9.  The term "FINRA Complaint" refers to the complaint filed by FINRA against Morgan Keegan on April 7, 2010.  ¶ 10.

Accounting's processes and evaluated the prices assigned to securities.  ¶ 75.  The SEC identified Thompson Weller as the other of the scheme's "two architects" in addition to defendant Kelsoe, describing him as the "head of fund accounting who turned a blind eye to the fund's bogus valuation process."  ¶ 103.  Defendant Thompson Weller was preceded by defendant Joseph C. Weller ("Joseph Weller"), who served as Treasurer and a director of the Funds from 2004 through 2006.  ¶ 30.  Defendant Charles D. Maxwell ("Maxwell") served as Secretary, Assistant Treasurer and a director of the Funds from 2003 through 2008.  ¶ 23.

Defendant Michele F. Wood ("Wood") served as Chief Compliance Officer and a director of the Funds from 2006 through 2008.  ¶ 33.  Defendant Wood is also a defendant in the Joint State Administrative Proceedings.  ¶ 105.

Defendant Carter E. Anthony ("Anthony") served as President of the Funds from 2004 through 2006.  ¶ 19.  Defendant Anthony was succeeded by defendant Brian B. Sullivan ("Sullivan"), who served as President and director of the Funds from 2006 through 2008.  ¶ 28. Along with defendants MAM, Kelsoe and Wood, Sullivan is a defendant in the Joint State Administrative Proceedings.  ¶ 105.  Defendant Thomas R. Gamble ("Gamble") served as a Vice President and director of the Funds from 2003 through July 2008.  ¶ 21.

Defendant Allen B. Morgan, Jr. ("Morgan") served as Chairman of the Board and director of the Funds from 2004 through 2006.  ¶ 25.  Defendant J. Kenneth Alderman ("Alderman"), who had served as a director of the Funds since 2004, succeeded defendant Morgan as Chairman of the Board and served in that position from 2006 through 2008.  ¶ 18.

The officers of the Funds, defendants Kelsoe, Anthony, Gamble, Maxwell, Tannehill, Joseph Weller, Thompson Weller and Wood (collectively, the "Officer Defendants"), were responsible for the Funds' operations.  ¶ 49.

### 4.    The Director Defendants

Defendants Jack R. Blair, Albert C. Johnson, James S.R. McFadden, W. Randall Pittman, Mary S. Stone and Archie W. Willis (collectively, the "Director Defendants") are former independent directors of the Funds, who served as directors until 2008.  ¶¶ 20, 22, 24, 26-27, 32. The Director Defendants have filed a separate motion to dismiss the Complaint.

Pursuant to the Funds' Prospectuses, the Board, consisting of defendants Alderman, Gamble, Maxwell, Morgan, Sullivan, Joseph Weller, Thompson Weller, Wood and the Director Defendants, provided broad supervision over the affairs of the Funds, including the duties performed by MAM.  ¶ 49.

### B.    Defendants Caused the Funds to Become Overconcentrated in Risky, Illiquid Securities in Violation of the Funds' Offering Materials

The Funds' Offering Materials filed with the SEC and disseminated to investors touted the diversification of the Funds' portfolios and stated that they would not be concentrated in any particular industry.  ¶ 3, 5.  Each Fund's prospectus stated that its investment objective was to invest a majority of its total assets in a diversified portfolio of below-investment grade debt securities offering attractive yield and capital appreciation potential.  ¶¶ 3, 42, 44, 46, 48.  In addition, each of the Fund's prospectuses sets forth investment limitations that could not be modified without full disclosure and the approval of the holders of a majority of the Fund's outstanding voting securities.  ¶¶ 4, 53.  The Funds' SAIs explicitly stated that the Funds may not "purchase the securities of any issuer (other than securities issued or guaranteed by the U.S. government or any of its agencies or instrumentalities) if, as a result, 25% or more of the Fund[s'] total assets would be invested in the securities of companies the principal businesses of which are in the same industry."  *Id*.

However, beginning in 2007, without shareholder approval, Defendants knowingly caused or allowed all of the Funds to become overly concentrated in risky illiquid securities, including ABSs, MBSs, CDOs and other illiquid securities and to invest more than 25% of their assets in the same industry, in clear violation of the Funds' stated policies. ¶ 54. As a result, the Funds were no longer the low-risk, diversified bond funds they claimed to be. ¶ 7. Moreover, Defendants knowingly caused the Funds to materially misrepresent their financial condition and performance by failing to disclose the full extent of the Funds' losses on their investments in these risky illiquid securities. ¶ 54.

For example, Defendants knowingly caused the Funds to invest heavily in CDOs, which are a type of structured ABSs whose value and payments are derived from a portfolio of fixed-income underlying assets. ¶ 55. The percentage of each Fund's assets concentrated in CDOs increased by almost three times between June 30, 2006 and June 30, 2007, as follows:

| Fund | Percentage Invested in CDOs | |
|---|---|---|
| | As of June 30, 2006 | As of June 30, 2007 |
| Helios Advantage | 12.8% | 34.4% |
| Helios High | 12.9% | 37.8% |
| Helios Multi-Sector | 10.9% | 31.6% |
| Helios Strategic | 12.9% | 37.8% |

¶ 55. In addition, as known by Defendants, as of December 31, 2007, each of the Funds had invested more than 25% of its assets in MBSs. ¶ 56. Specifically, Helios Advantage invested 31.2% of its assets in MBSs, Helios High invested 27%, Helios Multi-Sector invested 32% and Helios Strategic invested 30.9%. *Id*. This overconcentration in both CDOs and MBSs were in clear violation of the Funds' 25% limitation on concentration of investments. *Id*.

Furthermore, as stated in the FINRA Complaint, Morgan Keegan failed, in any 2007 sales materials related to any of the Funds, to disclose the problems in the MBS market or disclose that a substantial portion of the Funds' portfolios were acutely affected by then-current

economic conditions. ¶ 57. By early 2007, Defendants were well aware that the Funds were experiencing severe difficulties related to turmoil in the MBS market. ¶ 58. Pursuant to the FINRA Complaint, in firm-wide conference calls in February and March 2007, Kelsoe told several Morgan Keegan brokers that the Funds had invested in the subprime market and that NAVs were probably going to be hurt. *Id*. By early April 2007, Kelsoe reported that stress in the market had spread to other areas, and that he was concerned and alarmed about the Funds' NAVs. *Id*. Despite their knowledge regarding the MBS market, Defendants failed to disclose the Funds' overconcentration in MBSs and the extent of the risks and losses to the Funds. ¶ 59.

### C.    Defendants' Dissemination of False and Misleading Statements

Defendants further breached their fiduciary duties owed to the Funds and their shareholders by knowingly causing the Funds to issue false and misleading financial reports in order to conceal their illicit practices. ¶ 60. The Funds' SEC filings failed to disclose the full extent of the risks associated with the Funds' overconcentration in MBSs and other illiquid securities. *Id*. Furthermore, the Funds' financial statements were false and misleading because they concealed the true extent of the losses to the Funds, as the Funds' NAVs were artificially inflated and did not reflect "fair market value." *Id*. Indeed, according to the SEC Order, Kelsoe and MAM made misrepresentations and omissions of material facts directly to the Funds' investors concerning the Funds' performance. ¶ 61. As known by Defendants, the Funds' SEC filings did not disclose the improper practices in connection with the Funds. *Id*.

Moreover, as alleged in the FINRA Complaint, MAM and Morgan Keegan issued false and misleading sales materials with respect to the Funds from January 1, 2006 through December 31, 2007. ¶ 62. They also made false and misleading statements in direct response to customer and broker inquiries, which downplayed the risks and effects of market conditions on the Funds. *Id*.

The Funds' public filings, however, continued to tout the Funds' purported diverse portfolios. For example, the Funds' Certified Shareholder Report filed with the SEC on June 7, 2006 included a Management Discussion of Fund Performance signed by defendant Kelsoe, which failed to disclose any issues with the Funds' NAVs; rather stating that "[w]ith little change to underlying asset value, index performance has remained at coupon clipping levels (i.e., prices have held up)." ¶ 64. The report further touted Helios Advantage, Helios High and Helios Strategic's "relative net asset value stability produced by the Fund[s'] allocation to a wide variety of asset types." ¶ 65. Similarly, although the Funds' Semi-Annual Certified Shareholder Report filed with the SEC on December 7, 2006 acknowledged that "[i]n the asset-backed sector, however, concerns over the slow down in housing and real estate in general caused credit spreads to expand and acted to depress overall performance from our portfolio of mortgage related securities," it further assured that each of the Fund's "strong market performance is a reflection of investor's [sic] desire for cash distributions as well as the stability of the Fund's net asset value offered by a very diverse portfolio." ¶¶ 66-67.

On June 6, 2007, the Funds filed a Certified Shareholder Report that finally acknowledged that the Funds' performance had been negatively impacted by the recent turmoil in the mortgage market. ¶ 68. However, Defendants attempted to downplay the impact, stating that "[w]hile this downward volatility in the mortgage-backed arena has had a negative impact on the net asset value of the Fund[s], it has also provided an opportunity to buy assets at considerably higher yields than have been available for more than two years. Strategically redeploying assets during this market upheaval may be difficult from a net asset value perspective for a period of time, but this is also the best opportunity we have seen in years to secure better portfolio earnings for quarters to come." *Id*.

These SEC filings were false and misleading because they: (1) touted the diversification of the Funds' portfolios; (2) failed to disclose that Defendants invested heavily in MBSs, ABSs, CDOs and other illiquid risky securities; and (3) failed to disclose the true extent of the risks associated with such overconcentration and of the losses to the Funds.  ¶ 70.

### D.      Defendants' Manipulation of Net Asset Values

Defendants also breached their fiduciary duties by failing to price the Funds' illiquid investments, including MBSs, ABSs and CDOs, at "fair value."  ¶ 72.  The Funds' Board was responsible for pricing the Funds' securities in accordance with the Funds' valuation policies and procedures.  ¶¶ 52, 72.  By contract, the Board delegated its pricing responsibility to MAM, which priced each portfolio's securities and calculated its daily NAV through the Fund Accounting Department, led by defendant Thompson Weller.  ¶¶ 52, 72-75.

As stated in the Form N-Qs filed by the Funds, investments for which market quotations are not readily available or for which available quotations do not appear to accurately reflect the current value of an investment are valued at "fair value" as determined in good faith by MAM's Valuation Committee, of which defendant Thompson Weller was a member, using procedures established by and under the direction of the Board.  ¶¶ 74-75.  The SEC Order described the Funds' valuation procedures as follows:

> The Funds' valuation procedures for fair-valued securities mandated that such securities should be valued in "good faith" by the Valuation Committee, considering a series of general and specific factors including fundamental analytical data relating to the investment, an evaluation of the forces which influence the market in which the securities are purchased or sold and events affecting security.  The procedures, as set forth in the prospectus, required the Valuation Committee to maintain a written report documenting the manner in which the fair value of a  security was determined and the accuracy of the valuation made based on the next reliable public price quotation for that security. The procedures also required that prices assigned to securities be periodically validated through, among other means, broker-dealer quotes.

¶ 76 (internal quotations omitted).

-11-

However, according to the SEC Order, the Funds' securities were not priced pursuant to these policies, and MAM's Fund Accounting Department, the Valuation Committee and defendants Kelsoe and Thompson Weller failed to comply with such procedures.   ¶¶ 77-83.  MAM's Fund Accounting Department frequently accepted unsubstantiated price adjustments submitted by Kelsoe that inaccurately inflated the prices of certain securities, without documenting justifications for such price adjustments.   ¶¶ 77-78.   Specifically, the SEC Order stated that, between at least January 2007 and July 2007, defendant Kelsoe had his assistant send approximately 262 purported price adjustments to Fund Accounting, many of which were "arbitrary and did not reflect fair value." *Id*.   In addition, defendant Kelsoe actively screened and manipulated broker quotes, which were supposed to be used to validate prices.   ¶¶ 79-80.   The SEC Order alleges that Fund Accounting personnel gave Kelsoe excessive discretion in validating prices by allowing him to determine which broker-dealer quotes to use and which to ignore, without justification.   ¶ 81.   Defendants further violated the Funds' pricing and valuation procedures by leaving pricing decisions to lower-level employees in Fund Accounting who did not have the training or qualifications to make fair value pricing determinations and by failing to ensure that the fair value prices assigned to many securities were periodically reevaluated, resulting in stale values being carried on the Funds' books for months at a time. *Id*.

The SEC Order further alleges that defendant Thompson Weller "knew, or was highly reckless in not knowing, of the deficiencies in the implementation of valuation procedures… and did nothing to remedy them or otherwise to make sure fair-valued securities were accurately priced and the Funds' NAVs were accurately calculated."   ¶ 82.   In addition, in setting and evaluating the Funds' NAVs, Defendants knowingly excluded relevant and available information regarding the subprime mortgage crisis that clearly indicated that the stated values of the Funds'

-12-

assets were too high.  ¶¶ 84, 86-90.  Despite this material information, Defendants, in breach of their fiduciary and ethical duties, knowingly and improperly delayed the write-downs of the values of these investments that would have occurred if the NAVs were accurately reported, and knowingly failed to disclose the true financial performance of the Funds to their shareholders. ¶¶ 85, 91.

      E.     **Revelation of Misconduct**

Defendants' misconduct did not begin to come to light until the second half of 2007.  On August 10, 2007, defendant Kelsoe wrote an open letter to investors admitting for the first time that the Funds were having problems valuing their assets.  ¶ 95.  Four days later, each of the Funds filed an 8-K announcing that an independent valuation consultant had been retained to assist in determining the fair value of certain of the Funds' portfolio securities.  ¶ 96.  Thereafter, in their certified shareholder reports filed on December 5, 2007, the Funds disclosed the massive losses they had suffered with respect to their MBS and ABS holdings and the corresponding significant drop in NAVs, which, as noted by analysts, were far worse than those losses suffered by the Funds' competitors.  ¶¶ 97-99.

In addition, on June 10, 2010, the Funds announced that their financial statements for the fiscal years ending March 31, 2006 through 2009 should no longer be relied upon.  ¶ 100.  The Funds disclosed that by correspondence dated May 27, 2010, the Funds' independent auditor for fiscal years ending March 31, 2006 through 2008, PricewaterhouseCoopers LLP ("PwC"), informed the Funds that its audit reports with respect to those years' financial statements should no longer be relied upon.  *Id.*  By correspondence dated the following day, May 28, 2010, the Funds' independent auditor for the six-month period ending September 30, 2008 and the fiscal year ending March 31, 2009, BBD, LLP ("BBD"), informed the Funds that its audit reports for those periods should no longer be relied upon in light of PwC's announcement, as BBD had

relied upon PwC's audit reports with respect to the Funds' March 31, 2008 financial statements. *Id*. The Funds issued restated financial statements on August 25, 2010. ¶ 101. Notably, the Funds' net assets for fiscal year 2008 were reduced significantly for each Fund:

| Fund | Reduction in Net Assets |
|---|---|
| Helios Advantage | $10 million |
| Helios High | $7.8 million |
| Helios Multi-Sector | $11 million |
| Helios Strategic | $8.7 million |

*Id*.

### F. Plaintiffs Seek to Recover Damages from MAM, the Officer Defendants and the Director Defendants on Behalf of the Funds

On November 23 and 25, 2009, plaintiffs Cannaday and Godfrey, respectively, made their Demands on the Board to take action against MAM, the Officer Defendants and the Director Defendants for breaching their fiduciary duties owed to the Funds by, *inter alia*, knowingly deviating from the Funds' stated investment strategies, improperly investing substantial portions of the Funds' assets in risky securities and failing to disclose to the Funds' shareholders the full extent and overconcentration of these investments. ¶ 114; *see also* Exhibits A-F to the Complaint (the Demands). Subsequently, on March 18, 2010, Plaintiffs filed verified shareholder derivative complaints on behalf of each of the Funds.[6] Plaintiffs' four actions were consolidated into the instant Action pursuant to this Court's Order Granting Plaintiffs' Motion for Consolidation, dated November 5, 2010. (ECF No. 32). Thereafter, on December 6, 2010, Plaintiffs filed the Complaint. (ECF No. 33).

---

[6] The original four complaints were captioned *Cannaday v. Sullivan, et al.*, No. 2:10-cv-02188 (on behalf of Helios High); *Cannaday, et al. v. Sullivan, et al.*, No. 2:10-cv-02190 (on behalf of Helios Strategic); *Cannaday, et al. v. Sullivan, et al.*, No. 2:10-cv-02191 (on behalf of Helios Advantage); and *Godfrey v. Sullivan*, No. 2:10-cv-02192 (on behalf of Helios Multi-Sector).

On January 24, 2011, the MAM Defendants[7] (sans defendant Anthony), the Director

Defendants, and defendant Anthony filed their separate motions to dismiss the Action.  (ECF

Nos. 35, 41, 44).  Also on January 24, 2011, the nominal defendant Funds filed a motion to stay

the Action.  (ECF No. 39).  On February 9, 2011, the Court entered an Order staying the Action

until April 6, 2011.  (ECF No. 52).  Subsequently, on April 6, 2011, Plaintiffs and the Funds

filed an unopposed joint motion for a sixty-day extension of the stay of the Action.  (ECF No.

53).  On April 8, 2011, the Court entered an Order extending the stay of the Action until June 6,

2011.  (ECF No. 54).  Defendants' various motions to dismiss are now before the Court.[8]

## III.   ARGUMENT

### A.   The Motion Should Be Denied Because the MAM Defendants Have Improperly Converted Their "Motion to Dismiss" to a Motion for Summary Judgment

Although the MAM Defendants style their brief as a motion to dismiss pursuant to Fed.

R. Civ. P. 12(b)(6), they have clearly submitted a motion for summary judgment pursuant to Fed.

R. Civ. P. 56.  Motions submitted under these two rules are adjudicated under vastly different

standards and considerations.  Accordingly, a precise determination of the appropriate rule of

procedure is of significant importance.  *See Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.

1991) (holding that a district court may commit reversible error if it considers matters outside the

pleadings but fails to convert the motion to dismiss into a motion for summary judgment).

The Court's function in a Rule 12(b)(6) motion "is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff[s'] complaint alone is legally

---

[7] The term "MAM Defendants" refers collectively to MAM and the Officer Defendants.

[8] This memorandum of law addresses the MAM Defendants' Motion.  To the extent that the MAM Defendants incorporate by reference the arguments made by the Director Defendants and/or defendant Anthony, *see* MAM Def. Memo at 1 n.1, Plaintiffs likewise incorporate by reference their Memoranda of Law in Opposition to the Director Defendants' Motion to Dismiss and defendant Anthony's Motion to Dismiss, filed concurrently herewith.

sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).  However, in stark contrast, in a Rule 56 motion for summary judgment, the court considers "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009).

In other words, a motion to dismiss focuses on a legal evaluation whereas a motion for summary judgment is centered on an evidentiary determination.  In complete disregard of the precise standards of Rules 12(b)(6) and 56, the MAM Defendants have submitted hundreds of pages of documents with their motion, which includes a self-serving declaration by their counsel. By submitting these documents, the MAM Defendants have converted their 'motion to dismiss' into a 'motion for summary judgment.'  Fed. R. Civ. P. 12(b)(6) (when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); *Rebel Motor Freight, Inc. v. Freeman Drywall Co.*, 914 F. Supp. 1516, 1520 (W.D. Tenn. 1994) ("[w]here a motion to dismiss relies on matters outside the pleadings, that motion should be converted into a motion for summary judgment."). And in converting the motion to dismiss to a motion for summary judgment, the MAM Defendants have completely changed the standard and procedural posture by which this motion is to be evaluated.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) ("summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition"); *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231-32 (6th Cir. 1994) (holding that entry of summary judgment without permitting party to conduct any discovery at all will constitute an abuse of discretion.).

-16-

Accordingly, because discovery has yet to occur, and the MAM Defendants have submitted a motion for summary judgment, as a procedural matter, the Motion should be denied in its entirety.

> **B.     Should the Court Consider the Motion, the Applicable Pleading Standard Under Federal R. Civ. P. 12(b)(6)**

Should this Court choose to entertain the Motion, under the applicable pleading standards, Plaintiffs' claims for breach of fiduciary duty and unjust enrichment must be sustained. In reviewing a dismissal motion under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826 (1984). Plaintiffs need only allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and state a claim for relief that is plausible on its face. *See Hensley Mfg. v. Propide, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Moreover, in order to survive a Rule 12(b)(6) motion, Plaintiffs need only satisfy Fed. R. Civ. P. 8(a), which they have done. Contrary to the MAM Defendants' argument that Plaintiffs must plead their breach of fiduciary claims with particularity under the heightened pleading standard of Rule 9(b), Rule 8(a), the correct and presumed standard, requires only "a short and plain statement of the claim" made by "simple, concise, and direct allegations." *Michaels Bldg. Co.*, 848 F.2d at 679; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."). In fact, the pleading requirements under Rule 8 are so negligible that mere conclusions of wrongdoing will suffice. *See Frieri v. City of*

*Chicago*, 127 F. Supp. 2d 992 (N.D. Ill. 2001) (holding that under Rule 8's notice pleading standard, plaintiff may plead conclusions, so long as the conclusions provide defendant with minimal notice of the claim).   Here, Plaintiffs' Complaint asserts the simple claim that Defendants breached their fiduciary duties by intentionally violating the Fund Offering Materials, which included intentionally investing in assets contrary to the Funds' respective stated policies and then intentionally manipulating the NAVs to prohibit the detection thereof and affirmatively covering-up their scheme by filing false and misleading statements.   Thus, Plaintiffs' allegations give Defendants "fair notice" of their claims and the grounds upon which they rest such that the Motion must be denied.[9]

---

[9] The MAM Defendants do not, and cannot, point to any authority specifically extending the particularity requirements of Rule 9(b) to Plaintiffs' breach of fiduciary duty or unjust enrichment claims.  Indeed, courts across the country have rejected this same argument and apply Rule 8 to such claims.  *See e.g. In re Textainer P'ship Secs. Litig.*, No. C-05-0969 MMC, 2006 U.S. Dist. LEXIS 32896, at **28-29 (N.D. Cal. May 15, 2006) ("plaintiffs' state law claim for breach of fiduciary duty is not governed by a heightened pleading standard, but, rather, must satisfy only the notice pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure."); *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1231-32 (W.D. Wash. 2003); *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund*, 624 A.2d 1199, 1207, 1993 Del. LEXIS 217, at *19 (Del. 1993) (holding that breach of fiduciary duty claims are ***not*** required to be pled with particularity even when pled alongside fraud claims); *York Linings v. Roach*, 16622-NC, 1999 Del. Ch. LEXIS 160, at *2 (Del. Ch. July 28, 1999) (declining to apply Del. Ch. Ct. R. 9(b) to plaintiffs' breach of fiduciary duty claims).   Furthermore, contrary to the MAM Defendants' suggestions, the mere use of the word 'knowingly' does not somehow "convert" Plaintiffs' claims to those that sound in fraud under Rule 9(b). Fed. R. Civ. Proc. 9(b) ("[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *SEC v. Apuzzo*, No. 3:07cv1910, 2010 WL 5359928 (D. Conn. 2010) (holding that the requirement for pleading fraud with particularity does not apply to allegations of mental condition such as intent or knowledge, which only need to be pled generally; to satisfy this requirement, the complaint must allege an adequate factual foundation that creates a strong inference of scienter) (emphasis added); *U.S. ex. rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 509 (6th Cir. 2008) ("[b]ecause Rule 9(b) exempts allegations of malice, intent, knowledge, and other conditions of a person's mind from its heightened pleading requirement, it is not necessary…to allege with particularity facts showing that…[a party] acted with a particular purpose") (citations omitted.) *In re Mutual Fund Inv. Litig.*, 403 F. Supp. 2d 434 (D. Md. 2005) ("on claims for breach…fiduciary duties…the basic notice pleading requirements apply"); *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 1999 WL 550391 16472 (Del. Ch. 1999) ("breaches of fiduciary

**C.      Plaintiffs Have Adequately Stated Claims Against MAM, the Officer Defendants and the Director Defendants for Breaches of Fiduciary Duty Under Maryland Law**

As recently stated by the Maryland Court of Appeals in *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 2009 Md. LEXIS 837 (Md. 2009), "[d]eveloped as a check on directorial power, the derivative form of action permits an individual shareholder or group of shareholders to bring suit to enforce a corporate cause of action against officers, directors, and third parties. . . The purpose of the derivative action is to place in the hands of individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Shenker*, 983 A.2d at 423, 2009 Md. LEXIS 837, at *32 (internal quotations and citations omitted).  The case *sub judice* is the epitome of such a situation as the Plaintiffs here seek to hold Defendants liable for their breaches of fiduciary duties owed to the Funds which have caused harm to the Funds as a result of their egregious misconduct.  In order to plead a claim for breach of fiduciary duty under Maryland law,[10] a party must show: "(1) the existence of a fiduciary relationship, (2) a breach of duty owed by the fiduciary to the beneficiary, and (3) harm resulting from the breach." *Pease v. Wachovia SBA Lending, Inc.*, 6 A.3d 867, 889 n.13, 2010 Md. LEXIS 618, at *69 n.13 (Md. 2010) (quoting *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.,* 665 A.2d 1038, 1046, 1995 Md. LEXIS 140, at *24 (Md. 1995)).  The Complaint plainly and concisely pleads claims for breach of fiduciary duty against MAM, the Officer Defendants and the Director Defendants.

---

duty to corporation…*need not be pled with particularity*") (emphasis added.); *Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F.Supp.2d 538, 555-556 (D. Del. 2008) ("**…**in pleading directors' and officers' breaches of fiduciary duty, the notice pleading standard of Fed. R. Civ. P. 8 applies…").

[10] Plaintiffs agree with the MAM Defendants that, as the Funds are incorporated under the laws of the state of Maryland, the law of Maryland applies to Plaintiffs' breach of fiduciary duty and unjust enrichment claims.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98-99 (1991).

The *Shenker* Court explained in detail the scope and extent of the fiduciary duties of loyalty, good faith and care owed to a corporation by its officers and directors:

> It long has been established [] that directors of Maryland corporations stand in a fiduciary relationship to the corporations that they manage and the shareholders of those corporations, a relationship that imposes on directors duties of care, loyalty, and good faith. *Hoffman Steam Coal Co. v. Cumberland Coal & Iron Co.*, 16 Md. 456, 507 (1860); *Booth v. Robinson*, 55 Md. 419, 436-37 (1881); *Storetrax.com, Inc. v. Gurland*, 397 Md. 37, 53, 915 A.2d 991, 1000 (2007); *Mona*, 176 Md. App. at 695, 934 A.2d at 463. We have noted that the "confidence reposed in them, and the position they occupy towards the corporation and its stockholders, require a strict and faithful discharge of duty, and they are not allowed to derive from their position, either directly or indirectly, any profit or advantage whatever, except it be with the full knowledge and concurrence of the company, represented by others than themselves." *Booth*, 55 Md. at 437; *Coffman v. Maryland Publ'g Co.*, 167 Md. 275, 289, 173 A. 248, 254 (1934) (noting that officers and directors "stand in a fiduciary relationship both to the corporation and to the stockholders, and may not under any circumstances use the power intrusted to them to promote their personal interests at the expense of the stockholders"). We have found also that "[i]t is clear that officers and directors of a corporation stand in a sufficiently confidential relation to the corporation's stockholders to impose a duty upon them to reveal all facts material to the corporate transactions." *Parish v. Milk Producers Ass'n*, 250 Md. 24, 74, 242 A.2d 512, 539 (1968). ***These fiduciary duties are not intermittent or occasional, but instead are the "constant compass by which all director actions for the corporation and interactions with its shareholders must be guided*.**" *Storetrax*, 397 Md. at 54, 915 A.2d at 1001 (quoting *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998)). (emphasis added.)

*Shenker*, 983 A.2d at 420, 2009 Md. LEXIS 837, at **23-24. In addition to the foregoing, the governing Maryland statute, Section 2-405.1, also specifically sets forth the fiduciary duties owed to a corporation. *See* Md. Code Ann., Corps. & Ass'ns § 2-405.1 ("A director shall perform his duties…(1) [i]n good faith; (2) [i]n a manner he reasonably believes to be in the best interests of the corporation; and (3) [w]ith the care that an ordinarily prudent person in a like position would use under similar circumstances"); Restatement (Second) of Torts § 874 (stating that breach of fiduciary duty is independent and viable cause of action.).[11]   Furthermore,

---

[11] The MAM Defendants' reliance on *Int'l B'hood of Teamsters v. Willis Coroon Corp.*, 802 A.2d 1050, 2002 Md. LEXIS 499 (Md. 2002); *Kann v. Kann*, 589 A.2d 944, 1991 Md. LEXIS 92 (Md. 1997); and *Faller v. Faller*, No. DKC 09-0889, 2010 WL 1141202 (D. Md. March 22,

although the Complaint contains more detail with respect to the Defendants' knowledge of the misconduct, Plaintiffs are simply required to plead sufficient facts "from which it can reasonably be inferred that this 'something' was knowable and that the defendant was in a position to know it." *IOTEX Commc'n, Inc. v. Defries*, No. 15817, 1998 Del. Ch. LEXIS 236, at **12-13 (Del. Ch. Dec. 21, 1998).[12]

Here, there is no question that the Defendants owed fiduciary duties to the Funds. Specifically, MAM, as the Funds' investment advisor, had a duty to ensure that it invested in securities consistent with the Funds' respective investment objectives and policies. ¶ 50.  MAM determined which portfolio securities were to be purchased or sold, arranged for the placing of orders for the purchase or sale of portfolio securities, selected brokers or dealers to place those orders, maintained books and records with respect to the Funds' securities transactions and reported to the Board on the Funds' investments and performance. ¶ 50.  MAM also determined the liquidity of the Funds' investments. ¶ 52. In addition, the Funds paid MAM monthly as compensation for the services rendered which was equal to a percentage of the amount of the

2010) for their proposition that Maryland does not recognize breach of fiduciary claims is misplaced.  While the courts in those cases determined that breaches of fiduciary duty claims were inapplicable in those specific circumstances, those cases *did not* hold that Maryland does not recognize a cause of action for breach of fiduciary duty.  Indeed, as discussed above, Maryland has long recognized claims for breach of fiduciary duties, especially in the context of a shareholder derivative action.

[12] Without any legal basis, the MAM Defendants claim that the breach of fiduciary duty claims should be dismissed because the Complaint fails in "identifying a single illiquid security allegedly mis-valued, the date on which any such mis-valuation occurred, or any facts showing that any of the [Officer] Defendants knowingly and intentionally caused the Funds to mis-value such a security."  *See* MAM Def. Memo at 26.  Again, as discussed above, this level of specificity at the motion to dismiss stage far exceeds a short plain statement as required under Rule 8, and even exceeds the requirements of Rule 9(b).  *See Hooksett School Dist. v. W.R. Grace & Co.*, 617 F. Supp. 126 (D.N.H. 1984) (determining that Rule 9(b) does not require identification of exact circumstances constituting fraud.); *Loew's Inc. v. Makinson*, 10 F.R.D. 36 (N.D. Ohio 1950) (requiring circumstances constituting alleged fraud or mistake to be stated with "particularity", requires pleading of facts which constitute alleged fraud, but does not require evidentiary material to be pleaded).

Funds' daily total assets.  ¶ 51.  Defendants Kelsoe, Anthony, Gamble, Maxwell, Tannehill, Joseph Weller, Thompson Weller and Wood were officers of the Funds and were responsible for the Funds' daily operations. ¶ 49.  Indeed, the day-to-day management of the Funds' portfolios was the responsibility of a team led by defendant Kelsoe. ¶ 50.  Some of the Officer Defendants were also board members and directors of the Funds, defendants Alderman, Gamble, Maxwell, Morgan, Sullivan, Joseph Weller, Thompson Weller and Wood, along with the Director Defendants who were charged with supervising MAM and the Officer Defendants and monitoring the investments in illiquid instruments.  ¶ 52.

In gross breach of their fiduciary duties, beginning in 2007, without shareholder approval, Defendants knowingly caused all of the Funds to become overly concentrated in risky illiquid securities, including ABSs, MBSs, CDOs and other illiquid securities and to invest more than 25% of their assets in the same industry, in clear violation of the Funds' stated policies. ¶¶ 54, 107(a), 107(c).  As a result, the Funds were no longer the low-risk, diversified bond funds they claimed to be.  ¶ 7.  Moreover, Defendants knowingly caused the Funds to materially misrepresent their financial condition and performance by failing to disclose the full extent of the Funds' losses on their investments in these risky illiquid securities by, *inter alia*, manipulating NAVs to conceal the true losses suffered by the Funds.  ¶¶ 54, 107(b), 107(d), 107(e).  As known by Defendants, the Funds' SEC filings did not disclose the improper practices in connection with the Funds. ¶ 61.   Despite this material information, Defendants, in breach of their fiduciary and ethical duties, knowingly and improperly delayed the write-downs of the values of these investments that would have occurred if the NAVs were accurately reported, and knowingly failed to disclose the true financial performance of the Funds to their shareholders.  ¶¶ 85, 91. As a result of this misconduct, the Funds' accountants informed them that four years of financial

statements should no longer be relied upon, and, ultimately, the Funds were forced to restate their financial statements by over $37 million and took massive reductions in their net assets. ¶¶ 100-101.[13]

The foregoing misconduct is simply not protected under Maryland law. Indeed, the intentional violation of the Fund Offering Materials, which included intentionally investing in assets contrary to the Funds' respective stated policies and then intentionally manipulating the NAVs to prohibit the detection of such improper investments, was in bad faith and not in the best interests of the Funds. Indeed, "corporations are managed by their board of directors, who owe to shareholders duties of unremitting loyalty. This means that their actions must be taken in the good faith belief that they are in the best interests of the corporation and its stockholders." *In re Tyson Foods, Inc.*, No. 1106-C, 2007 Del. Ch. LEXIS 120, at **10-12 (Del. Ch. Aug. 15, 2007); *Malone v. Brincat*, 722 A.2d 5, 10, 1998 Del. LEXIS 495, at *11 (Del. 1998) ("The directors of [] corporations stand in a fiduciary relationship not only to the stockholders but also to the corporations upon whose boards they serve."). The Defendants' intentional misconduct, which caused the Funds to operate in an unlawful manner, plainly implicates their duties of loyalty and good faith as such misconduct was clearly not in the best interests of the Funds. Furthermore, Defendants breached their fiduciary duties by allowing the Funds to disseminate false and

---

[13]    Curiously, the MAM Defendants spill much ink claiming that this Court cannot consider the facts and allegations contained in the governmental actions filed by the SEC, FINRA and the Joint State Administrative Proceedings. MAM Def. Memo at 8-9, 26-27. Defendants are wrong. The Complaint includes allegations sufficient to state claims for breaches of fiduciary duties and unjust enrichment, without the inclusion of other facts from these proceedings as discussed in detail above. Therefore, the MAM Defendants citation to *In re Connetics Corp. Secs. Litig.*, 542 F. Supp. 2d 996 (N.D. Cal. 2008) is inapplicable as in that matter, the plaintiff relied solely on the allegations contained in an SEC complaint. Furthermore, as the court found in *In re Cylink Secs. Litig.*, 178 F. Supp. 2d 1077, 1083 (N.D. Cal. 2001), this court is certainly able to consider the facts and allegations alleged in the various governmental proceedings to conclude that Plaintiffs have alleged a reasonable inference of wrongdoing, in addition to the other facts pled.

misleading statements.  "Whenever directors communicate publicly or directly with shareholders about the corporation's affairs, with or without a request for shareholder action, directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty.  It follows *a fortiori* that when directors communicate publicly or directly with shareholders about corporate matters the *sine qua non* of directors' fiduciary duty to shareholders is honesty."  *Malone*, 722 A.2d at 10; 1998 Del. LEXIS 495, at *13.  Accordingly, the Complaint adequately asserts a claim for the Defendants' breaches of fiduciary duty in connection with their dissemination of false and misleading information.

In sum, Plaintiffs have more than adequately stated a claim for breach of fiduciary duties against MAM, the Officer Defendants and the Director Defendants.

### D. Plaintiffs Have Stated a Claim Against MAM for Unjust Enrichment Under Maryland Law

Plaintiffs have properly stated a claim under Maryland law for unjust enrichment against MAM in connection with its receipt of unlawful advisory fees from the Funds.  A claim for unjust enrichment consists of three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.  *See Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113, 2000 Md. LEXIS 455, at *13 (Md. 2000), *Hill v. Cross Country Settlements LLC*, 936 A.2d 343, 351, 2007 Md. LEXIS 721, at *10 (Md. 2007).

Here, Plaintiffs have easily satisfied their pleading burden.  Plaintiffs allege that the Funds, the true plaintiffs in interest in this action, conferred benefits upon MAM in the form of the advisory fees that the Funds paid to MAM.  ¶ 92.  There is no question that MAM had knowledge of its receipt of such fees.  Finally, Plaintiffs allege that, because the advisory fees

-24-

paid to MAM were based on the values of the assets held by the Funds, and because Defendants improperly inflated those values, MAM was overcompensated by the Funds, it would be unconscionable to allow MAM to retain these benefits.  ¶¶ 92, 94, 128-129.

The MAM Defendants' argument that Maryland law does not recognize a cause of action for unjust enrichment under the instant circumstances is incorrect.  It is true that in Maryland, an unjust enrichment claim may not be proper where the precise subject matter of the claim is covered by an express contract between the parties.  *See Jones v. Koons Auto., Inc.*, 752 F. Supp. 2d 670, 688 (D. Md. 2010).  However, courts will "'deviate from the principle of the rule and allow unjust enrichment claims… ***where there is evidence of fraud or bad faith***, there has been a breach of contract or a mutual rescission of the contract, when rescission is warranted, ***or when the express contract does not fully address a subject matter***.'"  *Id*. (emphasis added.) (quoting *County Comm'rs  v. J. Roland Dasheill & Sons, Inc.*, 747 A.2d 600, 2000 Md. LEXIS 43 (Md. 2000)).  Accordingly, the mere existence of a contract between the parties does not automatically bar an unjust enrichment claim.

Here, Plaintiffs allege that MAM has acted in bad faith by failing to follow proper procedures for determining the fair value of the Funds' portfolio holdings and thereby manipulating the Funds' NAVs.  *See* ¶¶ 72-85.  This in turn improperly inflated the advisory fees the Funds paid to MAM.  ¶¶ 92, 94, 128-129.  As Plaintiffs have pled the bad faith exception to the rule, their unjust enrichment claim should be allowed to proceed.

In support of their argument, the MAM Defendants also ask the Court to consider matters outside the pleadings, which is improper at this stage of the proceedings.  *See Tal*, 453 F.3d at 1252.  Even if the Court were to consider the investment advisory agreements attached to MAM's counsel's self-serving affidavit, the eight-page agreements between MAM and each

Fund are silent as to the Funds' remedies in the event that MAM improperly overvalues the Funds' NAVs, thereby inflating the fees the Funds pay to MAM.  *See* Exhibits N-P to Curley Dec. (Investment Advisory Agreements).  Accordingly, although there are contracts between the parties, there is no contract governing the subject matter of the instant dispute.  *See Jones*, 752 F. Supp. 2d at 688 (declining to dismiss unjust enrichment claim because it was premature to do so where the parties had not conceded that there was a valid agreement covering the same subject matter complained of); *RaceRedi Motorsports, LLC v. Dart Mach., Ltd.*, 640 F. Supp. 2d 660, 666 (D. Md. 2009) (declining to dismiss unjust enrichment claim pled in the alternative where contract terms remained in dispute); *MTBR LLC v. D.R. Horton, Inc.*, No. RDB-07-3363, 2008 U.S. Dist. LEXIS 66697, *36-37 (D. Md. Aug. 22, 2008) (declining to dismiss quasi-contractual claim where parties did not agree that there was a valid agreement covering same subject matter).

Accordingly, Plaintiffs are entitled to, and have pled, a proper claim for unjust enrichment against MAM, and the MAM Defendants' Motion with respect to Plaintiffs' unjust enrichment claim should be denied.

E.   **Plaintiffs' Claims for Breach of Fiduciary Duty and Unjust Enrichment Are Timely**

The MAM Defendants incorrectly contend that Plaintiffs were on notice of their claims for breach of fiduciary duty and unjust enrichment in late 2006 and by January 2007 at the latest, and as such, the majority[14] of Plaintiffs' claims are time barred by Maryland's three-year statute of limitations, as the initial complaints were filed on March 18, 2010.  *See* MAM Def. Memo. at 10-13.   The fact that Plaintiffs allege that a substantial portion of Defendants' misconduct

---

[14] Defendants state in their Motion that they are not seeking to dismiss plaintiff Godfrey' claims on behalf of Helios Multi-Sector for breach of fiduciary duty against defendants MAM, Morgan and Alderman on the basis that such claims are time-barred, as those defendants executed a tolling agreement with respect to such claims.  *See* MAM Def. Memo at 10 n.10.

occurred throughout the first seven months of 2007 illustrates that this argument is completely devoid of logic. The MAM Defendants' argument requires Plaintiffs to have been able to predict the future. Moreover, the MAM Defendants' argument confuses background information regarding the state of the subprime mortgage market cited in Plaintiffs' Complaint with the misconduct that Plaintiffs allege occurred. As discussed herein, Defendants' misconduct did not begin to be gradually revealed until August 2007. Accordingly, Plaintiffs' claims against Defendants' breaches of fiduciary duties that occurred both during 2006 and 2007 are timely.

Under Maryland law, actions for breach of fiduciary duty and unjust enrichment must be filed within three years from the date such claims accrue. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101; *Ladzinski v. MEBA Pension Trust*, 951 F. Supp. 570, 574 (D. Md. 1997) (three-year statute of limitations applies to breach of fiduciary duty actions); *Balt. City. Bd. of Sch. Comm'rs v. Koba Inst., Inc.*, 5 A.3d 60, 72, 2010 Md. LEXIS 128, at *29 (Md. Ct. App. 2010) (three-year statute of limitations applies to unjust enrichment actions). Maryland courts follow the "discovery rule," which provides that a cause of action accrues when a plaintiff knows or reasonably should know of the wrong. *See, e.g.*, *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 771 (4th Cir. 1995).[15]

Defendants improperly ask this Court to dismiss claims for breaches of fiduciary duties which not only did not accrue until late 2007 when they were revealed to the public, but with

[15] The MAM Defendants cite to two decisions applying the one-year statute of limitations applicable to actions brought pursuant to Sections 11, 12 and 15 of the Securities Act of 1933. *See* Def. Memo at 12-13 (citing *Freidus v. ING Groep N.V.*, 736 F. Supp. 2d 816 (S.D.N.Y. 2010) (applying one-year statute of limitations pursuant to 15 U.S.C. § 77m); *In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989 (PAC), 2011 WL 31548, at *6 (S.D.N.Y. Jan. 5, 2011) (same). Plaintiffs have not brought any such claims; accordingly, these decisions are inapposite. In addition, the MAM Defendants rely on *In re Sec. Capital Assurance, Ltd. Sec. Litig.*, 729 F. Supp. 2d 569 (S.D.N.Y. 2010), which does not involve a statute of limitations defense at all and therefore is likewise inapplicable.

respect to significant portions of the misconduct, did not even *occur* until 2007.  As discussed in detail above, Plaintiffs allege that Defendants breached their fiduciary duties owed to the Funds in several ways:  by overconcentrating the Funds' assets in ABSs, MBSs, CDOs and other risky, illiquid securities in violation of their governing documents; by making false and misleading statements; and by manipulating NAVs to conceal the true losses suffered by the Funds.  Much of this misconduct occurred in 2007, *after* Plaintiffs should have somehow known about it, according to Defendants.

Specifically, Plaintiffs allege that, "*beginning in 2007*, without shareholder approval, Defendants knowingly caused or allowed all of the Funds to become overly concentrated in risky illiquid securities, including MBSs, ABSs and subprime securities and to invest more than 25% of their assets in the same industry," and that during this time, Defendants failed to disclose that the Funds were overconcentrated in such securities and the risks associated therewith.  ¶¶ 54-59.  Similarly, Plaintiffs allege that Defendants made false and misleading statements from January 1, 2006 through December 31, 2007, including, *inter alia*, the Funds' Form N-Qs filed with the SEC on *February 28, 2007 and August 29, 2007* and Certified Shareholder Report filed on *June 6, 2007*.  ¶¶ 62-71.  Likewise, Plaintiffs allege that Defendants knowingly and improperly delayed writing down the value of the Funds' illiquid investments to fair value.  ¶¶ 72-85.  As alleged in the SEC Order, "*between at least January 2007 and July 2007*, Kelsoe had his assistant send approximately 262 purported price adjustments to Fund Accounting, many of which were 'arbitrary and did not reflect fair value.'"  ¶ 77 (emphasis added).  The MAM Defendants are asking the Court to impute Plaintiffs, as of late 2006 to January 2007, with knowledge of these subsequent acts and omissions, which took place through and including July

2007.  This assertion makes no sense and accordingly, the Court should reject the MAM Defendants' argument that such claims are time-barred.

Moreover, the MAM Defendants' assertion that general knowledge regarding the condition of the subprime mortgage market put Plaintiffs on notice of the specific acts of misconduct committed by Defendants is completely baseless.  Indeed, the MAM Defendants ask the Court to dismiss the Complaint on the grounds that news articles discussing the nationwide subprime mortgage crisis should have made Plaintiffs aware that MAM, the Officer Defendants and the Director Defendants had improperly overconcentrated the Funds' assets in ABSs, MBSs and CDOs in violation of the Funds' Offering Materials, manipulated the reported values of the Funds' investments to conceal the extent of the Funds' losses, and made false and misleading statements regarding the overconcentration in illiquid securities, the risks associated with such overconcentration and the extent of the losses caused thereby.  *See* MAM Def. Memo at 11.  The MAM Defendants' attempt to rewrite the facts of the Complaint and twist Plaintiffs' use of this background information into evidence that Plaintiffs should have known about the Defendants' misconduct is absurd.  The Plaintiffs were not on notice about potential wrongdoing until August 10, 2007, when defendant Kelsoe wrote an open letter to investors admitting for the first time that the Funds were having problems valuing their assets.  ¶ 95.[16]  Given that Plaintiffs filed their

---

[16] Similarly, the MAM Defendants contend that the Funds' semiannual certified shareholder report filed on December 7, 2006 should have put Plaintiffs on notice of all of their claims at such date.  *See* MAM Def Memo at 12-13 (citing ¶ 66).  As Plaintiffs allege, such report acknowledged "concerns over the slow down in housing and real estate in general [which] caused credit spreads to expand and acted to depress overall performance from our portfolio of mortgage related securities."  ¶ 66.  However, the MAM Defendants ignore the very next paragraph of the Complaint, which quotes the same shareholder report, as touting each Funds' "strong market performance [which] is a reflection of investor's desire for cash distributions as well as the stability of the Fund's net asset value offered by a very diverse portfolio."  ¶ 67.  The MAM Defendants' contention that Plaintiffs should have been on notice, as a result of this

original complaints on March 18, 2010, their claims are well within the statute of limitations period under Md. Code Ann., Cts. & Jud. Proc. § 5-101.

### F.    Defendants' Misconduct Is Not Exculpated by the Advisory Agreements, Investment Company Act of 1940, or Otherwise

Additionally, the MAM Defendants claim that Maryland law, the Investment Company Act of 1940 ("ICA"), and a contractual limitations clause in MAM's articles of incorporation exculpate officers and directors from complete liability.  Remarkably, despite making this bold assertion, the MAM Defendants contradictorily fail to cite any specific Maryland law or any section of the ICA.  In fact, the MAM Defendants did not cite any specific rule, opinion, treatise or other relevant authority in support.  Not surprisingly, Maryland law on this issue is contrary to the MAM Defendants' position.  Limitation of officer and director liability for Maryland corporations is dictated by Md. Code Ann., Cts. & Jud. Proc. § 5-418, which states in relevant part that:

Charter provisions expanding or limiting liability of directors or officers:

(a)    The charter, as defined under § 1-101 of the Corporations and Associations Article, of a Maryland corporation may include any provision expanding or limiting the liability of its directors and officers to the corporation or its stockholders for money damages, **but may not include any provision that restricts or limits the liability of its directors or officers to the corporation or its stockholders**:

    (1)    To the extent that it is proved that the person actually received an improper benefit or profit in money, property, or services for the amount of the benefit or profit in money, property, or services actually received;

    (2)    To the extent that a judgment or other final adjudication adverse to the person is entered in a proceeding based on a finding in the proceeding that the person's action, or failure to act, was the result of active and deliberate dishonesty and was material to the cause of action adjudicated in the proceeding; or

certified shareholder report, that they were manipulating the Funds' NAVs is baseless and should be rejected.

(3)     With respect to any action described in subsection (b) of this section.

(Emphasis added.)

Md. Code Ann., Cts. & Jud. Proc. § 5-418 expressly provides that the Officer Defendants and Director Defendants cannot be protected from liability in several circumstances, including deliberately dishonest actions that they engaged in when breaching their fiduciary duties. (*See Complaint generally*).  Accordingly, pursuant to  Md. Code Ann., Cts. & Jud. Proc. § 5-418, regardless of the supposed 'contractual limitation on liability' clauses contained in MAM's Advisory Agreements, as a matter of law, they cannot protect against the bad faith and deliberately dishonest actions that the Defendants engaged in.

Moreover, the MAM Defendants' incorrect position that the Funds' articles of incorporation and the Advisory Agreements shield them from liability is a factual argument that Defendants must plead and prove as an affirmative defense, not one that Plaintiffs must proffer evidence to rebut at this early pleadings stage.  *See, e.g., Emerald Partners v. Berlin*, 726 A.2d 1215, 1223, 1999 Del. LEXIS 97, at *19 (Del. 1999) (use of exculpatory provisions to shield directors from personal liability presents an affirmative defense not amenable for pre-trial disposition); *Kahn ex rel. Dekalb Genetics Corp. v. Roberts*, No. 12,324, 1994 Del. Ch. LEXIS 33, at *23 (Del. Ch. Feb. 28, 1994) (declining to dismiss breach of fiduciary duty claims based on exculpatory provision, since "[w]hether or not the directors acted in bad faith…. is a question of fact not reached at [the pleading] stage"); *In re Tower Air, Inc.*, 416 F.3d 229, 242 (3d Cir. 2005) (same); *Sanders v. Wang*, No. 16640, 1999 Del Ch. LEXIS 203, at **34-35 (Del. Ch. Nov. 8, 1999).

## IV.    IF NECESSARY, THE PLAINTIFFS SHOULD BE GIVEN LEAVE TO AMEND

In the event that the Court grants the MAM Defendants' Motion, Plaintiffs respectfully request leave to amend their Complaint pursuant to Fed. R. Civ. P. 15(a)(2). Indeed, when complaints are dismissed, courts liberally grant leave to amend pursuant to Fed. R. Civ. P. 15(a)(2).  *See Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987) ("Though the decision to grant leave to amend is committed to the trial court's discretion, that discretion is limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits."); *Anderson v. Young Touchstone Co.*, 735 F. Supp. 2d 831, 833 (W.D. Tenn. 2010) ("Rule 15 encourages federal courts to look favorably on requests to amend."); *U.S. for Benefit and Use of Ehmcke Sheet Metal Works v. Wausau Ins. Companies*, 755 F. Supp. 906. (E.D. Cal. 1991) (determining that amendments to pleadings are liberally allowed); *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945 (S.D.N.Y. 1983) (holding that the court should exercise its discretion liberally to permit amendment of pleadings); *Phoenix Techn., Inc. v. TRW, Inc.*, 154 F.R.D. 122 (E.D. Pa. 1994) (holding that district courts generally grant district courts requests to amend liberally, and deny them only where there has been undue delay, bad faith, or where it would be prejudicial to nonmoving party.)  Indeed, this Court has stated that under Rule 15, "a court shall freely give leave to amend a pleading unless 'the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'"  *Olson v. Regions Bank*, No. 09-2017, 2010 U.S. Dist. LEXIS 62791, at *6 (W.D. Tenn. June 23, 2010) (Mays, J.) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)).[17]

---

[17] Defendants' request to dismiss this Action with prejudice should be summarily rejected. Dismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances.  *See Goforth v. Owens*, 766 F.2d 1533 (11th Cir. 1985); s*ee also Theilmann v. Rutland Hosp. Inc.*, 455 F.2d 853 (2d Cir. 1972); *Davis v. Operation Amigo, Inc.*, 378 F.2d 101 (10th Cir. 1967); *Bon Air Hotel, Inc. v. Time, Inc.*, 376 F.2d 118 (5th Cir. 1967),

## V.     CONCLUSION

For all the foregoing reasons, the Court should deny the MAM Defendants' Motion in its

entirety.  However, should the Court grant the Motion, in whole or in part, Plaintiffs respectfully

request leave to amend their Complaint.

Dated:  July 19, 2011                                    Respectfully submitted,

                                                         **BRAMLETT LAW OFFICES**
                                                         By:

                                                         /s/ Paul Kent Bramlett
                                                         **PAUL KENT BRAMLETT TN#7387**

Paul Kent Bramlett   TN #7387/MS #4291
Robert Preston Bramlett    TN #25895
**BRAMLETT LAW OFFICES**
2400 Crestmoor Road
P. O. Box 150734
Nashville, TN  37215
Telephone:     (615) 248-2828
Facsimile:     (615) 254-4116
E-mail :       pknashlaw@aol.com
               Robert@BramlettLawOffices.com

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Eric L. Zagar
Robin Winchester
Kristen L. Ross
Richard Kim
280 King of Prussia Road
Radnor, PA 19087
Telephone:     (610) 667-7706
Facsimile:     (267) 948-2512
E-mail :       ezagar@ktmc.com
               rwinchester@ktmc.com
               kross@ktmc.com
               rkim@ktmc.com

***Attorneys for Plaintiffs***

---

*certiorari denied,* 393 U.S. 815, 859 (1968); *Indep. Prod. Corp. v. Loew's Inc.*, 283 F.2d 730 (2d
Cir. 1960); *Cullen v. New York State Civil Serv. Comm'n*, 435 F. Supp. 546 (E.D.N.Y. 1977).

## CERTIFICATE OF SERVICE

This is to certify that I have this date served a true and exact copy of the above and

foregoing:

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED DERIVATIVE COMPLAINT BY MORGAN
ASSET MANAGEMENT, INC. AND THE INDIVIDUAL DEFENDANTS**

by filing the document on the ECF filing system, which serves the following attorneys:

**Nicole A. Baker**
K & L GATES LLP
1601 K. Street, N.W.
Washington, DC 20006-1600
202-778-9018
202-778-9100 (fax)
nicole.baker@klgates.com

**Matthew M. Curley**
BASS BERRY & SIMS PLC
150 Third Avenue South
Ste. 2800
Nashville, TN 37201
615-742-6200
mcurley@bassberry.com

**Michael L. Dagley**
BASS BERRY & SIMS PLC
150 Third Avenue South
Ste. 2800
Nashville, TN 37201
615-742-6200
615-742-2803 (fax)
mdagley@bassberry.com

**Kevin C. Logue**
PAUL HASTINGS JANOFSKY & WALKER, LLP
75 East 55th Street
New York, NY 10022
212-318-6223
212-230-7620 (fax)
kevinlogue@paulhastings.com

**Jeffrey B. Maletta**
K & L GATES LLP
1601 K. Street, N.W.
Washington, DC 20006-1600
202-778-9062
202-778-9100 (fax)
jeffrey.maletta@klgates.com

**R. Harold Meeks, Jr.**
PURSLEY LOWERY & MEEKS, LLP
260 Peachtree Street
Suite 2000
Atlanta, GA 30303
404-880-7180
404-880-7199 (fax)
hmeeks@plmllp.com

**W. Brantley Phillips, Jr.**
BASS BERRY & SIMS PLC- Nashville
150 3rd Avenue South
Suite 2800
Nashville, TN 37201
615-742-7723
bphillips@bassberry.com

      **SO CERTIFIED** this 19th day of JULY, 2011.


                    *s/Paul Kent Bramlett*
                    **PAUL KENT BRAMLETT**